[Civ. No. 47355. First Dist., Div. Two. Apr. 16, 1980.]

WESLEY J. KINDER, as Insurance Commissioner, etc.,
Plaintiff and Respondent, v.
PACIFIC PUBLIC CARRIERS CO-OP, INC.,
Defendant and Respondent; .
MARY CAMPBELL, Real Party in Interest and Appellant.

658

COUNSEL

Jack A. Rose for Real Party in Interest and Appellant.

George Deukmejian, Attorney General, and Mervin R. Samuel, Deputy Attorney General, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

MILLER, J.—This is an appeal from an order of the superior court refusing to require the Insurance Commissioner as liquidator of Pacific Public Carriers Co-op, Inc. (hereafter Pacific) to permit the late filing of a claim.

By declaration filed in the lower court, appellant's attorney alleges that on November 1, 1975, appellant Mary Campbell, a housewife, engaged a taxicab to take her from the City of Orange to her home. At approximately 2:30 a.m., she was assaulted by the taxicab driver, John William Posey. Posey was a servant and employee of the Blue & White Transportation Company, Inc., dba, Blue & White Cab Company and Tustin Cab Company.

After a complete and thorough investigation was made by the Orange County Sheriff's Department, Posey pleaded guilty to Penal Code sec-

tion 245, subdivision (a), assault with a deadly weapon, and was sentenced to the state penitentiary.

On December 19, 1975, appellant filed an action against the cab driver, his employers, Blue & White Cab Company, Blue & White Transportation Company, Inc., Tustin Cab Company, Orange County Taxi, Inc., and the owner of the cab companies, Gordon P. Wiggins. On January 19, 1976, an answer was filed on behalf of the above mentioned companies and Gordon P. Wiggins, individually.

Prior to the events described above, Blue & White Transportation Company, Inc., dba, Blue & White Cab Company and Tustin Cab Company had deposited a memorandum of insurance with the City of Orange, dated October 23, 1975, showing Pacific as the primary insurance carrier for the cab company. During the same month, the Insurance Commissioner informed Pacific that, in his view, it was ineligible for a certificate of exemption from the insurance laws and, therefore, would need a certificate of authority to conduct an insurance business. Pacific was also informed that it could not act as a self-insurer because it had no insurable interest in the vehicles insured. Thereafter, on May 21, 1976, Pacific filed an application for license as an insurer. The commissioner then conducted an examination of the business of Pacific and found that Pacific failed to keep proper records and failed to meet California financial standards for license as an insurer. Accordingly, at all times here relevant Pacific was an unlicensed insurance company.

Pursuant to his verified application dated June 15, 1976, and by order of the superior court, the commissioner was appointed conservator of Pacific. On July 19, 1976, the commissioner filed his verified application for order of liquidation of Pacific and on August 11, 1976, the superior court issued its order appointing the commissioner liquidator of Pacific.

Commencing on September 1, 1976, the commissioner published notice to creditors, policyholders, shareholders, and all other persons interested in the assets of Pacific to file their claims with the commissioner within six months. The time for filing claims expired on March 2, 1977.

On or about April 6, 1977, a written inquiry was made on behalf of appellant to the deputy insurance commissioner in Los Angeles, Cali-

fornia, regarding the coverage of the taxi companies she was suing. On April 13, 1977, the commissioner responded that the coverage that Blue & White Transportation had at the time the incident occurred did not cover any claims based on assault and battery and that the time for filing claimes had expired on March 2, 1977.

Appellant's unliquidated third party liability claim was filed with the commissioner on October 21, 1977, seven months and nineteen days late. It was disallowed by the commissioner because of the late filing.

Appellant then moved for an order to show cause to permit the filing and allowance of the disallowed unliquidated third party liability claim. On February 14, 1978, the trial court issued its order denying permission for the late filing of the claim.

At the outset we note that the issues on appeal are governed by sections 1021, subdivision (a) and 1024 of the Insurance Code,[1] a part of the laws specifically relating to the liquidation of insurers. As used in these sections the word "shall" is mandatory. (Ins. Code, § 16.)

In *Carpenter v. Eureka Casualty Co.* (1936) 14 Cal.App.2d 533 [58 P.2d 682], the court construed the provisions of the Insurance Code here at issue.[2] In considering a claim filed with the commissioner more than 13 months after the statutory claims filing deadline, the court stated, "that when the legislature has, by statute, prescribed the mode and manner in which a right may be exercised, the courts are without authority to make a change." (*Id.*, at p. 536.) Additionally, the court held that when a statute does not create an exception, there will be none. (*Id.*, at p. 537.)

---

[1]Section 1021, subdivision (a) of the Insurance Code provides: "Upon the making of an order to liquidate the business of such person, the commissioner shall cause to be published notice to its policyholders, creditors, shareholders, and all other persons interested in its assets. Such notice shall require claimants to file their claims with the commissioner, together with proper proofs thereof, within six months after the date of first publication of such notice, in the manner specified in this article."

Section 1024 of the Insurance Code provides, in pertinent part: "Unless such claim is filed in the manner and within the time provided in section 1021, it shall not be entitled to filing or allowance, and no action may be maintained thereon."

[2]The statute involved in *Carpenter* was the predecessor to the sections of the Insurance Code hereinabove discussed. (Stats. 1919, ch. 178, p. 265, as amended by Stats. 1933, ch. 534, p. 1420.)

Appellant first contends that because the commissioner failed to perform an unspecified mandatory duty, the time for filing appellant's claim should be extended beyond the statutory deadline for filing claims. She cites *Morris* v. *County of Marin* (1977) 18 Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606] and *Elson* v. *Public Utilities Commission* (1975) 51 Cal.App.3d 577 [124 Cal.Rptr. 305] to support this contention. Both cases are distinguishable from the case at bench.

Both *Morris* and *Elson* involved damage actions against a public agency for failure to perform a specific statutory duty. Here, no damage action has been brought against the commissioner. Rather, the issue is whether or not the commissioner properly rejected appellant's claim on the basis of late filing. Moreover, even if this were a damage action, appellant fails to state, and we are unable to locate, any specific mandatory duty that the commissioner breached.[3]

■ Appellant next argues that the commissioner is estopped to reject appellant's claim which was filed seven months after the statutory

[3]Section 6320 of the [City of] Orange Municipal Code provides in pertinent part: "No owner or driver of a taxicab shall operate a taxicab in the City and no permit shall be granted unless there is on file with the City Clerk in full force and effect at all times while such taxicab is being operated, either: [¶] (a) A policy of insurance approved by the Council in a solvent and responsible company authorized to do business in the State of California, insuring the owner and driver of such taxicab against all liability imposed by law for injury to, or death of, any person, or damage to property, arising from or growing out of the maintenance, operation or ownership of such taxicab. Said policy may be limited to Fifty Thousand Dollars ($50,000.00) for the injury or death of one persona, and One Hundred Thousand Dollars ($100,000.00) for the injury or death of two or more persons in the same accident, and to Twenty-Five Thousand Dollars ($25,000.00) for injury or destruction of property. Said policy of insurance shall guarantee the payment to any and all·such persons suffering injury or damage to person or property, and to those entitled to recover for the death of any such person, of any final judgment rendered against such owner, within the limits above mentioned, irrespective of the financial condition or any actions or omissions of such owner, and shall insure to the benefit of such persons and those entitled to recover for the death of any such person. If, at any time, such policy of insurance shall be cancelled by the company issuing the same or the authority of such company to do business in the State shall be revoked, or in the judgment of the Council said company is insolvent, the Council shall require said owner to replace such policy with another policy or bond as hereinafter provided, satisfactory to the Council, and in default thereof, may revoke the owner's permit and license. [¶] (b) Subject to the approval of the Council, the owner of any taxicab operated under the provisions of this Part may file a bond of a responsible and solvent corporation authorized to issue such bonds under the laws of the State, containing the conditions and giving the protection required by the insurance policy required by this Section."

Conceivably, the City of Orange has a duty to not grant taxicab permits unless either subdivision (a) or (b) is complied with. However, any such statutory duty applies only to the City of Orange and not our state Commissioner of Insurance.

deadline. The argument is based on the fact that the commissioner's April 6, 1977, letter to appellant's attorney stated, in part, that Blue & White Transportation's insurance at the time of appellant's assault did not cover claims based on assault and battery.

Appellant correctly asserts that in an action for damages based on an assault by a cab driver on a passenger, an insurance carrier for the taxi company may be joined as a party defendant whenever the policy itself, or a municipal ordinance in compliance with which it is issued, provides that the policy shall inure to the benefit of the public. (*Butler* v. *Sequeira* (1950) 100 Cal.App.2d 143, 146 [223 P.2d 48]; *Connell* v. *Clark* (1948) 88 Cal.App.2d 941, 945 [200 P.2d 26].) However, the argument cannot end there.

Even if the commissioner took an erroneous position as to coverage of the insurance policy, it is not possible to translate this into a legal excuse for appellant's prior failure to timely file a claim on or before the preceding March 2, 1977, date. Appellant was required to file her claim by March 2, 1977. Her attorney's first inquiry to the commissioner's office did not occur until April 6, 1977, 35 days after the latest possible filing date. Any erroneous statement by the commissioner at that time could not have prevented a seasonable filing. In all cases cited by appellant in support of her position, the plaintiffs made timely attempts to file claims but were misled or prevented from doing so by some government action.

Furthermore, appellant's cited cases involved the tort claims law in wich provisions are made for late filing of claims under certain circumstances. (Gov. Code, §§ 911.2 and 911.4.) In direct contrast, the insurance liquidation laws make no provision for the late filing of claims. Far from providing for the late filing of claims, section 1024 of the Insurance Code does just the opposite and in mandatory language states that a late filed claim "shall not be entitled to filing or allowance."

■ We disagree with appellant's argument that, pursuant to section 1032 of the Insurance Code,[4] the trial court has inherent judicial power

---

[4] Section 1032 of the Insurance Code states: "When a claim is rejected by the commissioner, written notice of rejection shall be given by mail, addressed to the claimant at the address set forth in his claim. Within 30 days after the mailing of the notice the claimant may apply to the court in which the liquidation proceeding is pending for an order to show cause why the claim should not be allowed."

to permit the filing of a late claim. "Although the decisional law has established many rules of statutory construction, they all are basically guides in the judicial quest to determine the Legislature's intent so that the purpose of the legislation may be effectuated." (*People v. Caudillo* (1978) 21 Cal.3d 562, 576 [146 Cal.Rptr. 859, 580 P.2d 274].) Courts must give effect to statutes "according to the usual, ordinary import of the language employed in framing them." (*People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) Thus, since the language of section 1024 of the Insurance Code is clearly mandatory, the court has no power to use its discretion to allow for a late claim.

■ Finally, appellant contends that her due process of law rights have been violated. She argues that because she had no actual personal notice of the liquidation proceeding, the commissioner's published notice to creditors to file their claims before the statutory deadline lacked due process as to her.

■ "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.]" (*Mullane* v. *Central Hanover Tr. Co.* (1949) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652].) However, the United States Supreme Court "has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." (*Id.*, at p. 317 [94 L.Ed. at p. 875].)

■ In the case at bench, appellant never reported her claim to Pacific and there was no record of appellant's claim in Pacific's files when the commissioner took possession of Pacific's assets, properties and records on or about June 15, 1976. It was not until April 6, 1977 (35 days after the expiration of the time for filing claims) that the commissioner learned of appellant's complaint. From the information available to him in Pacific's records, there was no simple way that the commissioner could have known of appellant or given her personal notice. Nor do we find it reasonable to burden the commissioner with a duty to search all

county records, both within and outside California, to determine whether any actions have been filed against any of the policyholders of an insurance company in the process of liquidation.

Order affirmed.

Rouse, Acting P. J., and Smith, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 11, 1980.