[No. B064570. Second Dist., Div. One. May 13, 1993.]

JOHN GARAMENDI, as Insurance Commissioner, etc., Plaintiff and Respondent, v.
MISSION INSURANCE COMPANY, Defendant;
CARBOLINE COMPANY, Claimant and Respondent;
MISSOURI INSURANCE GUARANTY ASSOCIATION, Intervener and Appellant.

COUNSEL

Negele, Knopfler, Pierson & Robertson, George Knopfler, Deborah Broom Pegg and Royanne K. Doi for Intervener and Appellant.

Rubinstein & Perry, Karl L. Rubinstein, Dana Carli Brooks and Robert H. Nunnally, Jr., for Plaintiff and Respondent.

Blumenfeld, Kaplan, Sandweiss, Marx, Ponfil & Kaskowitz, Theodore D. Ponfil, James D. Bass, Bronson, Bronson & McKinnon, Ralph S. LaMontagne, Jr., and Eric A. Amador for Claimant and Respondent.

## OPINION

**ORTEGA, Acting P. J.**—This appeal is from a trial court order directing California's Insurance Commissioner to accept three late claims in the liquidation proceeding against an insolvent insurer. We reverse as to one of the claims and affirm as to the others.

### FACTUAL BACKGROUND

Carboline Company, a Missouri corporation, manufactured and sold roofing and surface coating products. Carboline was insured by Mission Insurance Company, a California insurer, for liability arising from occurrences (including personal injury and property damage) during the policy period, regardless of how many years later a claim was actually made. Such occurrence-based liability policies are described as having a " 'long tail.' " (*Middleton* v. *Imperial Ins. Co.* (1983) 34 Cal.3d 134, 136 [193 Cal.Rptr. 144, 666 P.2d 1].)

Mission became insolvent and was placed in conservatorship in 1985 upon the application of the Insurance Commissioner of the State of California.[1] (Ins. Code, § 1011.)[2] On February 24, 1987, the superior court granted the commissioner's application to liquidate Mission.[3] (§ 1016.) The commissioner gave the required notice of liquidation to Mission's known insureds, including Carboline. (§ 1021, subd. (a).)[4] Among other things, the notice stated "ALL CLAIMS OF ANY KIND MUST BE FILED ON OR BEFORE SEPTEMBER 12, 1987."

Carboline filed some 72 timely proof-of-loss claim forms with the commissioner. The bulk of these claims involved personal injury (based on

---

[1]From the time of the conservatorship order to this appeal, three different individuals have served as commissioner: Bruce Bunner, Roxani Gillespie, and the current commissioner, John Garamendi.

[2]Unless otherwise indicated, all further statutory references are to the Insurance Code.

[3]The liquidation order also applied to Mission National Insurance Company, Enterprise Insurance Company, Holland-America Insurance Company, and Mission Reinsurance Corporation.

[4]Section 1021, subdivision (a) provides: "Upon the making of an order to liquidate the business of such person, the commissioner shall cause to be published notice to its policyholders, creditors, shareholders, and all other persons interested in its assets. Such notice shall require claimants to file their claims with the commissioner, together with proper proofs thereof, within six months after the date of first publication of such notice, in the manner specified in this article."

alleged exposure to toxic fumes, chemicals, coatings and paints supplied by Carboline) or property damage (based on allegedly defective roofing systems supplied by Carboline). By filing these proof of claim forms, Carboline opened a claim under each policy issued by Mission to Carboline.

After the September 12, 1987, claims filing deadline, Carboline filed three additional proof-of-loss claim forms which the commissioner originally accepted but later rejected. The three rejected claims which are the subject of this appeal are: (1) the International Paper claim involving property damage caused by a defective roofing system (filed on Jan. 12, 1988); (2) the GHR claim involving property damage caused by fireproofing material (filed on Mar. 1, 1988); and (3) the Aristech claim involving property damage caused by fireproofing material (filed on Dec. 23, 1988).

With respect to the GHR claim, the record indicates the commissioner notified Carboline of the claim's acceptance in July 1989. Thereafter, Carboline paid over $170,000 in GHR defense costs and $312,300 in GHR settlement costs, in reliance upon the commissioner's acceptance of the late GHR claim.

The commissioner later revoked his acceptance of the GHR claim upon learning Carboline had known of its existence prior to the September 12, 1987, deadline. The parties do not dispute, with regard to known occurrences, that insureds must file timely proof of claim forms or be barred from sharing in any distribution in the liquidation proceeding. Section 1024 provides in part: "Unless such claim is filed in the manner and within the time provided in section 1021, it shall not be entitled to filing or allowance, and no action may be maintained thereon. . . ."

Carboline concedes it knew of the GHR claim prior to the claims filing deadline and that its failure to file a timely claim form may not be blamed on defective notice or any wrongdoing by the commissioner. Nevertheless, Carboline contends the commissioner must be estopped from rejecting the GHR claim because his initial acceptance of that claim caused Carboline to expend money in reliance thereon.

As for the International Paper and the Aristech claims, the commissioner has not disputed Carboline's avowed ignorance of the existence of those claims prior to the expiration of the claims filing period. The commissioner initially accepted both claims as amendments to other claims that were timely filed. Later, however, the commissioner rejected them both because of Carboline's failure to file a timely " 'notice' or 'policyholder protection' claim." The commissioner concedes that had Carboline filed a specific

"notice" or "policyholder protection" claim under each policy, Carboline would have preserved, with respect to the insolvency proceeding, the "long tail" effect of its policies for covered occurrences discovered after the claims filing deadline.

Carboline explains it failed to file any "notice" or "policyholder protection" claims because it was unaware of its right to do so.[5] In any event, Carboline maintains it substantially complied with the commissioner's "notice" or "policyholder protection" claim requirement by filing 72 timely claims which gave the commissioner notice of every policy held by Carboline and of the possibility that additional personal injury and property damage claims existed of which Carboline was unaware.

## PROCEDURAL BACKGROUND

As a Missouri insured of an insolvent insurer, Carboline is entitled to file a claim with the Missouri Insurance Guaranty Association (MIGA), which has a reciprocity agreement with California. The reciprocity agreement precludes MIGA from rejecting as untimely a claim which was deemed timely by our commissioner. Our commissioner's initial acceptance of Carboline's three claims filed after the September 12, 1987, deadline caused a repercussion with MIGA. Apparently, in the absence of the reciprocity agreement, MIGA would have denied the International Paper and Aristech claims as untimely because Missouri law does not permit insureds to file "notice" or "policy protection" claims to protect against occurrences discovered after the six-month claims filing deadline.

On September 21, 1989, MIGA filed a complaint seeking declaratory and injunctive relief to overturn the commissioner's acceptance of the International Paper, Aristech, and GHR claims. (Missouri Insurance Guaranty Association v. Roxani M. Gillespie, Insurance Commissioner of the State of California (Super. Ct. L.A. County, 1989, No. 738138).) The commissioner filed a cross-complaint and opposed MIGA's action until a year and one-half later, when the commissioner decided to deny the three claims over Carboline's objection. Accordingly, MIGA dismissed its complaint, and the commissioner dismissed the cross-complaint on April 2, 1991.

On April 8, 1991, the commissioner notified Carboline that the three claims were rejected. On May 8, 1991, Carboline applied to the superior

---

[5]Carboline's respondent's brief attacks the adequacy of the commissioner's notice of liquidation with respect to the filing of "notice" or "policyholder protection" claims. We need not reach that issue, however, because we are affirming the order accepting the International Paper and Aristech claims for a different reason.

court overseeing Mission's liquidation proceeding for an order to show cause (OSC) why the three claims should not be allowed. (§ 1032.)[6]

On September 4, 1991, MIGA filed a complaint in intervention in Mission's liquidation proceeding. (Code Civ. Proc., § 387, subd. (a).) MIGA claimed an interest in the OSC hearing due to its responsibility for administering the claims should the commissioner's rejection be overruled.

At the September 11, 1991, OSC hearing, the parties (Carboline as the applicant versus MIGA and the Commissioner as the respondents) agreed that Carboline had known of the GHR claim prior to the September 12, 1987, claims filing deadline. As for the other two claims, however, neither the commissioner nor MIGA offered evidence to refute Carboline's attorney's assertion that Carboline was ignorant of those claims until after the claims filing deadline had expired. In addition, neither the commissioner nor MIGA objected when the trial court expressed its understanding that there was a concession that the International Paper and Aristech claims were unknown to Carboline prior to the claims filing deadline.

At the close of the OSC hearing, the trial court orally stated its decision to permit the filing of the International Paper and Aristech claims. The trial court agreed with Carboline that because the 72 timely proof-of-loss claim forms had caused each of Carboline's policies to be opened, the commissioner received the same information that a "notice" or "policyholder protection" claim would have given. The trial court concluded Carboline had protected the "long tail" effect of its policies with respect to those two claims.

The trial court, however, reserved its ruling on the GHR claim, which differed from the other two claims because it was a known claim. The trial court gave Carboline 10 days to submit additional evidence to support its estoppel theory, and gave MIGA and the commissioner 10 more days to respond. The court indicated the matter would be deemed submitted without further oral argument on October 1, 1991.

On September 23, 1991, Carboline filed the declaration of Judith Hellman, Carboline's director of corporate services, which outlined the expenses Carboline had incurred in reliance on the commissioner's initial acceptance of the GHR claim. Neither the commissioner nor MIGA responded to Hellman's declaration.

---

[6]Section 1032 provides: "When a claim is rejected by the commissioner, written notice of rejection shall be given by mail, addressed to the claimant at the address set forth in his claim. Within 30 days after the mailing of the notice the claimant may apply to the court in which the liquidation proceeding is pending for an order to show cause why the claim should not be allowed."

On October 9, 1991, after the matter was submitted, MIGA filed a motion requesting that judicial notice be taken of newly discovered evidence regarding the International Paper and Aristech claims. MIGA's new evidence indicated that Carboline had also known of those claims prior to the September 12, 1987, filing deadline.

Carboline objected to MIGA's request for judicial notice. Carboline asserted the request was untimely because the matter had been submitted. Carboline claimed the new evidence should be disregarded because the trial court had granted leave to file additional evidence concerning the GHR claim only.

On December 4, 1991, the trial court entered a minute order allowing the GHR claim to be filed due to Carboline's detrimental reliance on the commissioner's initial acceptance of that claim. On August 26, 1992, the trial court entered a revised minute order which added the following paragraph to the December 4, 1991, order: "The Aristech and International Paper Claims are also allowed. This Order is deemed effective December 4, 1991."

■■■■ MIGA appeals from the order of December 4, 1991.[7]

## ISSUES ON APPEAL

MIGA contends (I) the three claims filed after the deadline should have been rejected under the six-month bar of section 1024; (II) the Aristech and International Paper claims should have been rejected because Carboline failed to prove the claims were unknown to Carboline prior to the claims filing deadline; and (III) the commissioner should not have been estopped from rejecting the GHR claim.

## DISCUSSION

### I

Section 1024 provides in relevant part: "Unless such claim is filed in the manner and within the time provided in section 1021, it shall not be

---

[7]Although the parties agree the order is appealable, the commissioner, who has filed a respondent's brief, notes there is no published authority on this point. A section 1032 order directing the commissioner to accept a proof of claim form is equivalent to a writ of mandate although section 1032 does not use that term. (See *Abraugh* v. *Gillespie* (1988) 203 Cal.App.3d 462, 464 [250 Cal.Rptr. 21], where the court called an OSC petition under section 1032 a petition for writ of mandate.) As such, an order under section 1032 is appealable. (See Code Civ. Proc., §§ 1110, 1064; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 208, pp. 834-835.)

entitled to filing or allowance, and no action may be maintained thereon. . . ." MIGA contends this language precluded the commissioner from accepting the three additional claims filed after the September 12, 1987, deadline. We agree as to the GHR claim, which was known to Carboline prior to the deadline. We disagree, however, with regard to the International Paper and Aristech claims which the court concluded were unknown to Carboline prior to the deadline.

In support of its position, MIGA relies on *Kinder v. Pacific Public Carriers Co-op, Inc.* (1980) 105 Cal.App.3d 657 [164 Cal.Rptr. 567], which stated that "the insurance liquidation laws make no provision for the late filing of claims. Far from providing for the late filing of claims, section 1024 . . . does just the opposite and in mandatory language states that a late filed claim 'shall not be entitled to filing or allowance.' " (*Id.* at p. 663.)

We distinguish this case from *Kinder*, which involved a late claim brought by a third party (who was not an insured of the insolvent insurer) who was not notified of the liquidation by the commissioner. This case involves a policyholder who received the commissioner's notice of liquidation and filed 72 timely claims. The court below concluded Carboline's filing of 72 timely claims constituted substantial compliance with the commissioner's requirement that Carboline must also have filed timely "notice" or "policyholder protection" claims in order to preserve the "long tail" effect of its policies.[8]

While MIGA disputes the commissioner's authority to permit insureds to file "notice" or "policyholder protection" claims, California law on this point has been settled for quite some time. In *Carpenter v. Coast Surety Corp.* (1938) 25 Cal.App.2d 209 [77 P.2d 294], the appellate court discussed a related issue involving sections 1019 and 1025. Section 1019 provided (as it still does) that creditors' rights "shall, unless otherwise directed by the court, be fixed as of the date of the entry of the order" of liquidation. The appellate court noted that standing alone, section 1019 could be interpreted to mean that unmatured, undetermined, or unliquidated claims would be barred from sharing in the distribution of the liquidation estate. The appellate court rejected this interpretation, however, as being contrary to section 1025. Section 1025 provided (as it still does) for the filing of "unliquidated or undetermined" claims.[9] The *Carpenter* court concluded that section 1025 constituted "a modification of the general rule" that claims filed after the bar

---

[8]We need not reach the unbriefed issue of whether the trial court's ruling on the substantial compliance theory was correct. The commissioner has appeared only as a respondent, and MIGA has not raised the substantial compliance issue in its brief.

[9]At the time of the *Carpenter* decision, section 1025 read: " 'Claims founded upon unliquidated or undetermined demands must be filed within the time limit provided in this article for the filing of claims, but claims founded upon such demands shall not share in any

date will be rejected as untimely. (*Carpenter* v. *Coast Surety Corp.*, *supra*, 25 Cal.App.2d at p. 212.)

The commissioner cites section 1025 as the statutory basis for the long-standing policy in California to permit insureds to file "notice" or "policyholder protection" claims to preserve the "long tail" effect of liability policies written on an occurrence basis. The commissioner states in his respondent's brief: "Although Sections 1019 and 1024 might ordinarily bar any claim of which the insured had no knowledge prior to the bar date, Section 1025 was written to provide holders of contingent and unliquidated claims with an opportunity to share in the assets of the estate. This preserves the rights of 'long tail' policyholders."

No California court has disagreed with the commissioner's preceding interpretation of section 1025. In a case decided 10 years ago, the California Supreme Court implicitly approved of the commissioner's policy to permit insureds to file "contingent" claims to preserve the "long tail" effect of occurrence based policies, stating: "The Commissioner concedes that insofar as the insolvency proceeding is concerned, appellants would have been protected if they had filed such 'contingent' claims within the six-month period." (*Middleton* v. *Imperial Ins. Co.*, *supra*, 34 Cal.3d at p. 138, fn. 5.) The *Middleton* court ruled, partly on the basis of the commissioner's concession, that the commissioner must expand the class of persons to whom notice of insolvency is given, stating: "We therefore conclude that appellants should have been given notice as insureds as well as 'persons known or reasonably expected to have or be interested in claims against the insurer.' They paid for policies protecting them against actions, whenever brought, if the alleged malpractice was committed during the policy period. That is what a 'long tail' is all about, as was explicitly recognized in the notices the Commissioner did send out. . . ." (*Id.* at p. 139.)

Because California law requires the commissioner to give notice of the insolvency and the claims filing period to insureds whose liability policies were written on an occurrence basis, it necessarily follows that California

distribution to creditors of a person proceeded against under section 1016 until such claims have been definitely determined, proved and allowed. Thereafter, such claims shall share ratably with other claims of the same class in all subsequent distributions. [¶] An unliquidated or undetermined claim or demand within the meaning of this article shall be deemed to be any such claim or demand upon which a right of action has accrued at the date of the order of liquidation *or accrues within the time limit provided in this article for the filing of claims,* and upon which the liability has not been determined or the amount thereof liquidated; *provided, however, that claims founded upon judicial surety bonds and undertakings securing unmatured obligations shall be deemed to be unliquidated and undetermined demands within the meaning of this section.'* " (*Carpenter* v. *Coast Surety Corp.*, *supra*, 25 Cal.App.2d at pp. 210-211, italics added to show language which has been deleted from the present version of § 1025.)

law permits the commissioner to accept "notice" or "policyholder protection" claims filed within the six-month period. It also must be the case that the filing of such a claim preserves the "long tail" effect of the policy despite the language of sections 1019 and 1024. MIGA cites contrary foreign statutes and decisions which are not binding on this court and which are factually and legally distinguishable. Those foreign authorities are irrelevant to our determination which must be based on California law. Accordingly, we will not discuss the foreign authorities cited by MIGA.

As MIGA has not discussed the *Middleton* decision in its opening brief, it obviously has not explained why we are not bound by that decision under *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]. In any event, we are not inclined, even if authorized to do so, to overturn the commissioner's long-standing policy, based on a sound interpretation of statutory and decisional law, upon the unsupported request of a foreign insurance guaranty association. It appears a more reasonable solution might be for MIGA to seek corrective legislation in its own state.

II

▋ MIGA's alternative contention is that there is no evidence these three late claims were unknown to Carboline prior to the claims filing deadline.

Turning first to the GHR claim, the uncontroverted evidence established the GHR claim was known to Carboline during the six-month claims filing period. Accordingly, Carboline's failure to file a timely claim was fatal under section 1024. (*Kinder* v. *Pacific Public Carriers Co-op, Inc., supra*, 105 Cal.App.3d at pp. 663-664.) We will address the issue of estoppel in part III.

We next address the Aristech and International Paper claims. At the OSC hearing, the trial court accepted Carboline's counsel's unrefuted representation that the Aristech and International Paper claims were unknown to Carboline prior to the claims filing deadline. MIGA contends this was insufficient proof to establish that the Aristech and International Paper claims were unknown claims.

Regardless of whether the unrefuted unsworn statement of counsel is the equivalent of sworn testimony, the record indicates MIGA failed to object below when the trial court stated it was permitting both claims to be filed "on the basis that [Carboline] didn't know and couldn't have known of the

claim[s] *because that's conceded here."* (Italics added.) Although the concession was actually made by the commissioner alone, it appears MIGA remained silent because MIGA was not then attacking the claims on the basis that they were known to Carboline prior to the cutoff date. MIGA's primary contention at that time was that the commissioner had no authority to accept late claims, period.

It was not until after the matter was submitted that MIGA attempted to prove the International Paper and Aristech claims were known claims. The trial court rejected MIGA's untimely offer of proof, and MIGA does not attack on appeal the propriety of that ruling. Moreover, MIGA did not attempt to vacate the submission, to move for reconsideration, or to seek other relief below.

On this record, we conclude the commissioner's concession that the claims were unknown to Carboline, as well as MIGA's failure to object to that concession, provided sufficient evidence to support the trial court's finding that the claims were unknown claims.

### III

■ We conclude the trial court erred in estopping the commissioner from rejecting the GHR claim, thereby circumventing the mandatory filing requirement of section 1024. (See *Kinder* v. *Pacific Public Carriers Co-op, Inc., supra,* 105 Cal.App.3d at pp. 663-664.) Although an exception exists for *unknown* occurrences where the insured had filed a timely "notice" or "policyholder protection" claim, no such exception exists for *known* occurrences. Carboline's admissions that it knew of the GHR claim during the six-month period, and that its failure to file a timely claim was not the fault of the commissioner, precluded the commissioner's acceptance of the untimely GHR claim.

The theory of equitable estoppel has no application to these facts. The commissioner initally accepted the GHR claim because the commissioner was unaware that the GHR claim was a known claim. Had Carboline revealed its prior knowledge of the GHR claim, the commissioner would never have accepted the claim beyond the six-month filing period. When the commissioner learned of Carboline's prior knowledge of the GHR claim, the commissioner properly exercised his mandatory duty under section 1024 and rejected the untimely claim.

The commissioner's initial mistaken acceptance of the late GHR claim was unauthorized and contrary to the commissioner's statutory powers.

"Estoppel may not be invoked to contravene constitutional and statutory provisions that define an agency's powers. [Citations.]" (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 184, p. 866.)

In addition, "[t]here can be no estoppel where it would defeat operation of a policy protecting the public. [Citations.]" (11 Witkin, Summary of Cal. Law, *supra*, Equity, § 183, p. 864.) The commissioner's wrongful acceptance of the GHR claim would have unjustly enriched Carboline at the expense of all the other claimants who had filed timely claims.

Finally, we rely on the general principle that "[*h*]*e who comes into equity must come with clean hands.*" (11 Witkin, Summary of Cal. Law, *supra*, Equity, § 8, p. 684.) The fact that Carboline failed to disclose from the outset that the GHR claim was a known claim precludes Carboline from obtaining equitable relief.

We reverse the order insofar as it permitted the late filing of the GHR claim.

### DISPOSITION

We reverse the portion of the December 4, 1991, order allowing the GHR claim to be filed. In all other respects, the order is affirmed. Each party is to bear its own costs on appeal.

Masterson, J., and Ito, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied July 29, 1993.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.