[No. B110278. Second Dist., Div. Six. Mar. 10, 1998.]

KEITH G., Plaintiff and Appellant, v.
SUZANNE H., Defendant and Respondent.

## COUNSEL

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Appellant.

Brown & Martinez and John Brown for Defendant and Respondent.

## OPINION

**YEGAN, J.**—What is good for the goose is good for the gander. Here what was bad for the goose is now bad for the gander. A final 1986 California judgment requires Missouri resident Keith G. (father) to pay $253 per month to Suzanne H. (mother) for the support of their minor son, B. Father ignored this obligation for approximately eight years and owes mother approximately $25,000 in child support. In 1994, B. moved to Missouri to live with father. Father obtained a Missouri court order requiring mother to pay $277 per month in child support. He sought civil enforcement of the order in California under the Uniform Reciprocal Enforcement of Support Act (URESA). (Former Fam. Code, § 4800 et seq. now the Uniform Interstate Family Support Act, Fam. Code, § 4900 et seq.)[1] Mother argued she was entitled to a setoff of approximately $25,000 of arrearages owed pursuant to the 1986 California judgment. The trial court agreed.

The Attorney General, representing father, contends on appeal that the setoff is an impermissible modification of the Missouri order that violates both URESA and the Full Faith and Credit for Child Support Orders Act (FFCCSOA). (28 U.S.C.A. § 1738B.) As we shall explain, the trial court's order enforcing a judgment for child support but granting a setoff is not only rooted in common sense and fairness, it is also consistent with constitutional, statutory, and decisional law. We affirm.

### Facts

Father and mother married in 1981. B. was born in 1982. The parties separated in November 1985. Mother and B. moved from Missouri to California where, in December 1985, mother filed a petition to dissolve the marriage. Father's motion to quash service of process for lack of personal jurisdiction was denied and he did not participate further in the action. On October 31, 1986, mother obtained a California judgment dissolving the marriage, awarding her sole custody of B. and requiring father to pay $253 per month for B.'s support.

---

[1] All statutory references are to this code unless otherwise stated.

Meanwhile, father filed a petition for dissolution in Missouri in January of 1986. He obtained a judgment in September 1986 that awarded custody of B. to him. The judgment made no provision for B.'s support.

Between November 1985 and the summer of 1991, mother had continuous physical custody of B. and received virtually no voluntary child support directly from father. She was able to obtain $8,600 in wage garnishments. In 1991, B. visited his paternal grandparents in Missouri and was not returned to California on schedule. Mother forced B.'s return by posting a $5,000 bond and obtaining a writ of habeas corpus from a Missouri court.

In connection with the habeas corpus proceeding, and a consolidated action for payment of child support, the Missouri Court of Appeals ruled that the 1986 California judgment was unenforceable in Missouri on the theory that California lacked jurisdiction over B. when the petition for dissolution was filed. It returned B. to mother's "temporary" custody but refused to order father to pay the arrearages due under the California judgment. We need not opine on the correctness of this opinion.

In 1992, father and mother agreed that B. would move to Missouri to live with father. By this time, father owed $24,328 in child support pursuant to the California judgment. In early 1994, father obtained an order from the Missouri court requiring mother to pay monthly child support of $277. Mother did not pay child support and did not seek a modification of the Missouri order. B. is not receiving public assistance for his support and the dispute only concerns father and mother.[2]

Father sought civil enforcement of the Missouri order in California under URESA. (Former § 4849.) Ventura County registered the order in July 1996 and sought a wage assignment against mother for ongoing support and arrearages. (Former § 4851.) Mother argued she was entitled to a setoff for arrearages under the 1986 California judgment. The trial court agreed, finding that the equities weighed in favor of mother and that a setoff for arrearages under the California judgment would not modify the Missouri order. The Attorney General, representing father, appeals.

*Setoff for Accrued Child Support*

Under URESA, a foreign support order that is registered in California, "shall be treated in the same manner as a support order issued by a court of

---

[2]We express no opinion on whether government aid would dictate a different result. (See, e.g., *In re Marriage of Comer* (1996) 14 Cal.4th 504, 529 [59 Cal.Rptr.2d 155, 927 P.2d 265] [In an action to recover child support arrearages, noncustodial parent may not assert estoppel defense based on concealment of the child "against a county or other governmental agency that has been assigned the right to receive support arrearages for AFDC reimbursement or other public assistance payments."].)

this state. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner." (Former § 4853, subd. (a).) In an action to enforce a registered foreign support order, "there shall be no . . . cross-complaints, and the claims or defenses shall be limited strictly to the identity of the obligor, the validity of the underlying foreign support order, or the accuracy of the obligee's statement of the amount of support remaining unpaid unless the amount has been previously established by a judgment or order." (Former § 4853, subd. (b).) Here, the amount of unpaid child support under the Missouri order had not been judicially established before the trial court entered the order currently on appeal.

In URESA actions, as in all other proceedings to enforce child support orders, the trial court may not modify or terminate the support order "as to an amount that accrued before the date of the filing of the notice of motion . . . to modify or terminate." (§ 3651, subd. (c).)

 Father contends that the setoff is an impermissible modification of support arrearages and that the trial court's order violates former section 4853, subdivision (b) because a setoff is analogous to a cross-complaint. Mother denies that any modification has occurred, and contends that the setoff permitted here is not analogous to a cross-complaint because it is a liquidated debt and father's liability has been established. We conclude that mother is correct.

 When an out-of-state judgment or order for child support is registered in California, it becomes a California judgment for the arrearages and is subject to the same defenses as any other judgment. (Former § 4853; *In re Marriage of Chester* (1995) 37 Cal.App.4th 1624, 1629-1630 [44 Cal.Rptr.2d 717].) In an action to enforce such a judgment, the trial court lacks jurisdiction to reduce or modify support arrearages. (*In re Marriage of Perez* (1995) 35 Cal.App.4th 77, 80 [41 Cal.Rptr.2d 377].)

However, the trial court does have discretion to determine the manner in which the judgment will be enforced. (*In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072, 1075-1076 [261 Cal.Rptr. 36]; *Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 366-367 [124 Cal.Rptr. 101].) Accordingly, the trial court may give credit for past overpayment (*In re Marriage of Peet* (1978) 84 Cal.App.3d 974, 980-981 [149 Cal.Rptr. 108]), "permit only partial enforcement or . . . quash, in toto, a writ of execution directed against a parent in arrearage who, during the period in question, has had the sole physical custody of the child[,]" (*In re Marriage of Trainotti, supra,* 212 Cal.App.3d

at p. 1075), or take into consideration "whether the debtor had satisfied or otherwise discharged the obligation imposed by the original order. [Citations.]" (*Ibid.*) In addition, an obligor is entitled to credit for amounts paid under a support order from another state. (Former § 4840.)

■ The setoff requested by mother stands on the same footing as a credit for payments or overpayments under a foreign support. As the court noted in *Trainotti:* "The instant case is little different from any other instance in which a trial court, in determining the amount of a judgment, is required to credit the judgment debtor with any setoff to which he is entitled . . . ." (*In re Marriage of Trainotti, supra,* 212 Cal.App.3d at p. 1075.)

■ A setoff ". . . [is] founded on the equitable principle that 'either party to a transaction involving mutual debts and credits can strike a balance, holding himself owing or entitled to the net difference . . . .' [Citation.]" (*Granberry* v. *Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970].) Setoffs are routinely allowed in actions to enforce a money judgment. (*Brienza* v. *Tepper* (1995) 35 Cal.App.4th 1839, 1847 [42 Cal.Rptr.2d 690]; *Salaman* v. *Bolt* (1977) 74 Cal.App.3d 907, 918 [141 Cal.Rptr. 841]; *Margott* v. *Gem Properties, Inc.* (1973) 34 Cal.App.3d 849, 854 [111 Cal.Rptr. 1].) Indeed, "The offset of judgment against judgment is a matter of right absent the existence of facts establishing competing equities or an equitable defense precluding the offset." (*Brienza* v. *Tepper, supra,* 35 Cal.App.4th at p. 1848.)

■ The Family Code does not expressly prohibit a trial court from allowing a setoff for obligations under conflicting support orders. Nor has any California published opinion considered whether such a setoff should be allowed.

*Williams* v. *Williams* (1970) 8 Cal.App.3d 636 [87 Cal.Rptr. 754], rejected a noncustodial parent's request to set off unpaid child support against expenses he incurred for the maintenance of community property, one-half of which should have been paid by the custodial parent but were not. (*Id.* at pp. 638-639.) The *Williams* court reasoned that child support "is not an 'ordinary debt' but rather a court-imposed obligation to provide for one's child[,]" and concluded that allowing such a setoff would violate former Civil Code section 139 as a retroactive alteration of accrued, unpaid child support. (8 Cal.App.3d at p. 639.) In addition, there were "other significant reasons" to deny the setoff. (*Id.* at p. 640.) First, a cross-complaint involves "cross-demands *by one party against the other.*" (*Ibid.*) Child support, by contrast is "a debt owing to the child . . . ." (*Ibid.*) Second, the *Williams* court concluded that, ". . . the very nature of child support gravitates

against the allowance of the setoff sought. Such support is strongly favored in the law and statutes providing for it are to be liberally construed to promote their purpose of protecting the family. [Citations.] To allow the setoff sought by defendant would frustrate both this purpose and the trial court's support order, since it would allow him to use child support funds to maintain property held in common by him and plaintiff." (*Ibid.* at p. 640; see also *In re Marriage of Comer, supra*, 14 Cal.4th 504, 517 ["It is well settled that a child support obligation '. . . runs to the child and not the parent. [Citation.]' (*In re Marriage of McCann* (1994) 27 Cal.App.4th 102, 108 [32 Cal.Rptr.2d 639] . . . .)"].)

*Williams* is plainly distinguishable from the present case. In *Williams*, the father sought a setoff of a debt for unpaid child support against a community property debt owed to him by the mother. Here, mother seeks a setoff from her obligation to pay child support for B. against father's obligation to pay accrued child support.

We reject father's argument that a setoff here would function as a retroactive modification of mother's accrued support obligation. (§ 3651, subd. (b); *In re Marriage of Perez, supra*, 35 Cal.App.4th at p. 80.) Allowing the setoff does not reduce or eliminate the amount of the arrearages. The setoff only affects the manner of collection in California. Allowing the setoff would not frustrate the purpose of either support order. Instead, the setoff exchanges support payments by mother for those owed by father.

■ A setoff differs significantly from the cross-complaints that are barred by former section 4853, subdivision (b). A cross-complaint is a separate pleading in which a defendant alleges affirmative claims for relief against a plaintiff or a third party who is related to the underlying lawsuit. (Code Civ. Proc., §§ 425.10, 426.10, 426.30.) The claims alleged in a cross-complaint may be factually related to the initial complaint, or they may be factually distinct. (Code Civ. Proc., §§ 426.30, 428.10.) The cross-complaint initiates, rather than terminates, litigation between the parties. ■ Former section 4853 properly bars these pleadings to streamline the enforcement of child support orders by preventing the parties from raising unrelated claims to reduce or eliminate their support obligations. By prohibiting the consideration of factually or legally unrelated claims, former section 4853 focuses the attention of the parties and of the court on the most important issue: the financial support of a child.

■ A setoff, by contrast, is not a claim for relief. It occurs at the end of litigation and "is a means by which a debtor may satisfy in whole or in part a judgment or claim held against him out of a judgment or claim which he

has subsequently acquired against his judgment creditor. The right exists independently of statute and rests upon the inherent power of the court to do justice to the parties before it. [Citations.]" (*Salaman* v. *Bolt, supra,* 74 Cal.App.3d at p. 918.)

 Allowing a setoff among conflicting child support orders poses little risk of prolonging URESA enforcement actions, of distracting judicial attention from the support issue, or of jeopardizing a child's financial security by reducing support to extract payment of an unrelated debt. This is especially true here, because B. is not receiving public assistance. Accordingly, the prohibition against cross-complaints contained in former section 4853, subdivision (b) does not prevent the trial court from allowing a setoff.

### Full Faith and Credit

Father contends that, even if a setoff is available under URESA, allowing it here violates the FFCCSOA. (28 U.S.C.A. § 1738B.) We disagree. FFCCSOA requires that each state, "(1) shall enforce according to its terms a child support order made consistently with this section by a court of another State; and [¶] (2) shall not seek or make a modification of such an order except . . ." in circumstances not present here. (28 U.S.C.A. § 1738B(a).) A modification is, "a change in a child support order that affects the amount, scope, or duration of the order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order." (28 U.S.C.A. § 1738B(b).)

The order at issue here violates neither FFCCSOA nor the more general constitutional principle of full faith and credit. Under that order, mother owes monthly child support for B. of $277, the amount determined by the Missouri court. The order affects only the manner in which mother pays her obligation, not its amount, scope or duration. Accordingly, the trial court's order does not violate FFCCSOA.

 As the United States Supreme Court noted in its most recent opinion on the subject: "Full faith and credit . . . does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments. Enforcement measures do not travel with the sister state judgment . . . ; such measures remain subject to the evenhanded control of forum law." (*Baker* v. *General Motors Corp.* (1998) ___ U.S. ___, ___ [118 S.Ct. 657, 665, 139 L.Ed.2d 580].)

### Fairness and Equity

 Under California law, the trial court has discretion to determine the appropriate means of enforcing a judgment for child support. (*In re Marriage*

*of Schenck* (1991) 228 Cal.App.3d 1474, 1479 [279 Cal.Rptr. 651]; *In re Marriage of Sandy* (1980) 113 Cal.App.3d 724, 728 [169 Cal.Rptr. 747].) In exercising that discretion, the trial court can, and should take the equities of the situation into account. (*In re Marriage of Trainotti, supra,* 212 Cal.App.3d at p. 1075; *In re Marriage of Utigard* (1981) 126 Cal.App.3d 133, 140 [178 Cal.Rptr. 546].)

■ Here, mother single-handedly supported B. for almost eight years. While she had custody of B., father ignored his legal and moral obligation to support his son. (*In re Marriage of Hyon & Kirschner* (1991) 231 Cal.App.3d 449, 455 [282 Cal.Rptr. 408].) Now father has custody and, after years of forcing mother to endure the financial hardship of single parenthood, he asks the court to order mother to pay child support so that he can escape the fate which he inflicted upon her. Allowing him to do so would be unfair.
■ " '[H]e who comes into equity must come with clean hands.' " (*Garamendi* v. *Mission Ins. Co.* (1993) 15 Cal.App.4th 1277, 1289 [19 Cal.Rptr.2d 190], quoting 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 8, p. 684.) These are some of the dirtiest hands we have seen. " 'He who seeks equity must do equity.' " (*Warsaw* v. *Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 576 [199 Cal.Rptr. 773, 676 P.2d 584]; see also *In re Marriage of Plescia* (1997) 59 Cal.App.4th 252, 257 [69 Cal.Rptr.2d 120].)
■ We presume that as soon as father pays the arrearages owed pursuant to the 1986 California judgment, the trial court will require payments under the 1994 Missouri judgment.

After weighing the equities, the trial court wisely fashioned a common-sense remedy that does not harm B. and does not reward father for his recalcitrance. The overall policy of the law is fairness. (*Gardiner Solder Co.* v. *SupAlloy Corp., Inc.* (1991) 232 Cal.App.3d 1537, 1543 [284 Cal.Rptr. 206].) The trial court's order denying enforcement can only be described as fair.

The order is affirmed. Costs to respondent.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Petition for rehearing was denied on April 8, 1998, and the following opinion was then rendered:

**YEGAN, J.**—In its petition for rehearing, the Attorney General says: "To elaborate on the Court's metaphor, what is bad for the goose may be bad for the gander, not to mention richly deserved. But it may also harm the gosling . . . ." In essence, the Attorney General claims that while the opinion may achieve fairness between the litigants, it may do financial harm to the child.

To be sure, in every child support case, the court should take into consideration the effect of its ruling on the children. We presume that the trial court, which fashioned the remedy that we affirm, took into consideration the financial impact that its ruling would have on the child. At the time it ruled, the trial court impliedly determined that no adverse financial effect would result and that father had adequate financial resources to support his son on his own. There is no reason for an appellate court to draw a contrary inference. Moreover, we also noted that this was not a case where government funds were being used to support the child. In this situation, the implied factual finding of the trial court is all the more compelling.

The Attorney General challenges the wisdom of our opinion, argues that it defeats the salutary goal of interstate child support collection, and requests that we withdraw publication so that the opinion will only apply to the parties. However, the law of setoff is well settled and it is too late in the day to question the equitable powers of the courts in the enforcement of judgements. The facts and circumstances of the presenting case are compelling, which the trial court obviously recognized. The principles of law put forth in support of the opinion are equally compelling. For these reasons, the request to decertify the opinion for publication is denied.

Should there be a material change of circumstances which necessitates trial court intervention, we presume that the trial court will once again attempt to achieve fairness between the parties, taking into consideration the then financial needs of the child.

The petition for rehearing is denied.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 24, 1998. Kennard, J., was of the opinion that the petition should be granted.