[No. C008867. Third Dist. Apr. 1, 1991.]

In re the Marriage of DEBRA ANNETTE and JOHNNY WALTER SCHENCK.
DEBRA ANNETTE SCHENCK, Appellant, v.
JOHNNY WALTER SCHENCK, Respondent.

COUNSEL

Robert J. Slade for Appellant.

Beckman & Baskette and Ronald M. Beckman for Respondent.

OPINION

SCOTLAND, J.—In a dissolution of marriage proceeding, the family law department of the San Joaquin County Superior Court entered a deferred sale of home order (Civ. Code, § 4700.10; former Civ. Code, § 4800.7) which awarded appellant (wife) exclusive occupancy of the former family residence for three years and expressly reserved jurisdiction over its ultimate "valuation and disposition."

Thereafter, respondent (husband) accumulated child and spousal support arrears totaling $8,863.14. Wife obtained a writ of execution under the Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.; further statutory references are to this code unless otherwise specified) and had the San Joaquin County Sheriff levy on husband's community property interest in the former family residence. She then applied for a court order allowing the sale of husband's interest, which was necessary because the property levied upon was a dwelling. (§§ 704.740, 704.750.) Her application was

heard in the civil law and motion department rather than the family law department.

Noting the "very real possibility" that the value of husband's interest in the property would be "substantially impaired" if it were sold at an execution sale where wife likely would be the only bidder, the court denied her application and advised her to bring the matter before the family law department.

On appeal, wife contends that the court had a mandatory duty to issue a sale order notwithstanding the family law department's order deferring sale of the home and reserving jurisdiction over its valuation and disposition. She is incorrect. Because the relief she requested would have adversely affected the family law department's ability to exercise its reserved jurisdiction to determine the valuation and distribution of the residence in a manner consistent with the equal division requirements of the Family Law Act, the law and motion department properly yielded to the family law department which had "priority of jurisdiction." (See generally 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, § 191, pp. 217-218.)

### Facts and Procedural Background

When the judgment of dissolution of marriage was entered, wife was awarded custody of the parties' two children, and husband was ordered to pay $350 per month for their support. In addition, he was ordered to pay $150 per month for spousal support and was found to be $3,114 in arrears under pendente lite support orders.

It was undisputed that the family residence in Stockton is community property. It was so characterized in the judgment of dissolution which awarded wife exclusive possession of the residence for three years, until she remarried or until she moved out, whichever occurred first. She was required to make all mortgage, tax and insurance payments, and husband was awarded a $190 per month credit against his support obligations during wife's exclusive possession of the home. The judgment provided, "Valuation and disposition of the family residence . . . shall stand reserved."

Following entry of judgment, the parties reconciled and lived together for a period of two years and one month. After the reconciliation failed, the parties stipulated to extend wife's exclusive possession of the family residence.

When husband's support arrearage increased to $7,414, wife sought and obtained a writ of execution for that sum plus $1,449.14 in accrued interest.

The San Joaquin County Sheriff levied on husband's interest in the family residence by recording the writ of execution and a notice of levy with the county recorder.

On February 22, 1990, wife filed an application for an order for sale of husband's interest in the residence. (See §§ 704.740, 704.750.) Pursuant to section 704.770, the civil law and motion department directed husband to show cause why an order of sale should not issue in accordance with the application. At hearings on the application, the parties stipulated that husband had not resided on the property since February 1989, and wife acknowledged she wanted to remain in possession of the house and did not want to sell it to a third party. She argued that if the court determined husband was not entitled to a homestead exemption, the court was required to order sale of the property. She noted that, in light of the stipulation that husband had not lived on the property since February 1989, the residence clearly was not his homestead. (See § 704.710, subd. (c).)

Husband opposed the application, asserting that the family law department had reserved jurisdiction over the valuation and disposition of the residence following the period of wife's exclusive occupancy. He argued that an equal division of the community asset would be impossible if his interest were sold at an execution sale where, in all likelihood, the only bidder would be wife, whose bid would not have to exceed the amount of his support arrears.

The civil law and motion department acknowledged husband's concern that the only bidder at the execution sale undoubtedly would be wife who could acquire husband's interest for far less than one-half of the community's equity in the property. The court then denied wife's application for a sale order, stating: "the only equitable way to really resolve this is for this to be returned to the family court and for the house to be appraised. And if [husband's] debt exceeds one half of the appraised value of the house, then the house should be awarded to [wife]."

### Discussion

We begin by considering the statutory scheme under which wife obtained a writ of execution and sought an order for the sale of husband's interest in the family residence. We then consider the principle of priority of jurisdiction between departments of the superior court, and determine that wife's requested relief would have interfered with the family law department's exercise of its reserved jurisdiction to value and dispose of the family residence. Finally, we consider and reject wife's contention that she is entitled to attorneys' fees on appeal.

I

■ The Family Law Act expressly authorizes execution as a means of enforcing support judgments. Civil Code section 4380 provides: "Any judgment, order, or decree of the court made or entered pursuant to this part may be enforced by the court *by execution*, the appointment of a receiver, contempt, or by such other order or orders as the court in its discretion may from time to time deem necessary." (Italics added; see 8 Witkin, *op. cit. supra*, Enforcement of Judgment, § 395, pp. 336-337; Schwartz & Ahart, Cal. Practice Guide, Enforcing Judgments and Debts (1990) § 6:315.) Under section 4380, the superior court has discretion to determine in each case whether execution is the appropriate enforcement remedy. (*Messenger* v. *Messenger* (1956) 46 Cal.2d 619, 630 [297 P.2d 988] [predecessor statute]; *In re Marriage of Utigard* (1981) 126 Cal.App.3d 133, 145 [178 Cal.Rptr. 546].)[1]

Husband did not challenge the issuance of the writ of execution by seeking to have it recalled, and he effectively concedes that the writ was properly issued. (See *In re Marriage of Wight* (1989) 215 Cal.App.3d 1590, 1592, fn. 1 [264 Cal.Rptr. 508].)

A writ of execution requires a levying officer to enforce the judgment. The officer does so by levying on the debtor's property, i.e., by seizing the property under the writ, either constructively or actually. (§§ 699.510-699.530, 700.010-700.200; 8 Witkin, *op. cit. supra*, § 89, pp. 95-96; Cal. Practice Guide, *supra*, §§ 6:366-6:393.) To levy on real property, the officer records the writ of execution and a notice of levy with the recorder for the county in which the property is located. (§ 700.015, subd. (a); 8 Witkin, *op. cit. supra*, § 110, p. 110; Cal. Practice Guide, *supra*, §§ 6:411.) The levying officer must serve a copy of the writ and notice of levy on an occupant of the real property (here wife). (§ 700.015, subd. (c); 8 Witkin, *op. cit. supra*, § 111, p. 110; Cal. Practice Guide, *supra*, § 6:467.) It is undisputed that the officer did so in this case.

■■■ Although all of a debtor's property, including the debtor's interest in community property, generally is subject to enforcement of a money judgment (§ 695.010; see 8 Witkin, *op. cit. supra*, § 48, pp. 63-64),[2]

---

[1] *Moniz* v. *Moniz* (1966) 241 Cal.App.2d 74 [50 Cal.Rptr. 267] and its progeny, *Szamocki* v. *Szamocki* (1975) 47 Cal.App.3d 812, 818 [121 Cal.Rptr. 231] and *Leiden* v. *Hudson* (1979) 95 Cal.App.3d 72 [156 Cal.Rptr. 849], relied upon by wife, attempt to narrow the court's discretion whether to issue the writ. No issue of the scope of the court's discretion is presented in this case.

[2] Section 695.020, subdivision (a), provides: "Community property is subject to enforcement of a money judgment as provided in Title 8 (commencing with Section 5100) of Part 5 of Division 4 of the Civil Code." Civil Code section 5120.110, subdivision (a), states in perti-

real property dwellings "may not be sold to enforce a money judgment except pursuant to a court order for sale obtained under [division 2, chapter 4, article 4 of the Code of Civil Procedure]." (§§ 704.710, subd. (a),

---

nent part: "Except as otherwise expressly provided by statute, the community property is liable for a debt incurred by either spouse *before or during* marriage, . . ." (Italics added.) Because Civil Code section 5120.110, subdivision (a), addresses debts incurred *before or during* marriage but makes no mention of debts incurred *after* marriage (i.e., where there has been a bifurcation of status, and dissolution has been granted with the court reserving jurisdiction over property and other issues), it could be argued that the familiar rule of statutory construction, *expressio unius est exclusio alterius* [the expression of one thing is the exclusion of another], suggests that undivided community property assets (e.g., the former family home the sale of which has been deferred) are *not* liable for postdissolution debts such as husband's support obligation and, therefore, are not subject to enforcement proceedings. (See, e.g., *In re Lance W.* (1985) 37 Cal.3d 873, 888 [210 Cal.Rptr. 631, 694 P.2d 744]; *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].) However, the legislative history of Civil Code section 5120.110 reveals that the section was not meant to prevent execution on undivided community assets pending their division, but simply was intended to ensure that postseparation debts are satisfied exclusively from the debtor spouse's interest in the property.

In 1984, pursuant to a recommendation of the Law Revision Commission, a new chapter 3 of title 8 of the Civil Code was enacted, entitled "Liability of Marital Property." (11 Witkin, Summary of Cal. Law (9th ed. 1990) Community Property, § 150, p. 556; see 16 Pacific L.J. 637; Hogoboom & King, Cal. Practice Guide, Family Law (1990) § 8:178 et seq.) Civil Code section 5120.110 was a part of this enactment. As the Law Revision Commission's report explained: "Upon legal separation or dissolution of marriage, the community and quasi-community property and the debts are divided between the spouses. Notwithstanding the division of property and debts, a creditor may seek to satisfy the debt out of any property that would have been liable for the debt before the division. Thus, a creditor may reach former community property awarded to a nondebtor spouse even though the property division requires that the debtor spouse pay the debt. In such a situation the nondebtor spouse has a cause of action against the debtor spouse for reimbursement. [¶] This scheme is unsound. . . . Community property is liable during marriage because this avoids the serious administrative problems of characterizing the type of property and debt partitioning the community property, and gives greatest assurance that creditors will be satisfied. Upon dissolution, however, the property and debts are characterized as separate or community, and the community property and debts are partitioned among the parties; one or both of the spouses are required to satisfy the creditors. The administrative and policy reasons for undifferentiated liability of community property are thus eliminated upon dissolution and division of the property and debts. [¶] Liability of community property for debts should cease upon dissolution and division of the property. A creditor should be able to collect a debt from the person to whom the debt is assigned for payment, without regard to the type of property—former community or separate property—from which the debt is satisfied. This eliminates tracing problems and is consistent with the purposes of the Family Law Act to require payment of a debt by the person to whom the debt is assigned, but does not impair the creditor's rights against the debtor. In allocating the debts to the parties, the court in the dissolution proceeding should take into account the rights of the creditors so there will be available sufficient property to satisfy the debt by the person to whom the debt is assigned, provided the net division is equal. . . ." (Report, p. 22, quoted in 11 Witkin, *op. cit. supra*, § 149, pp. 554-555.)

The Law Revision Commission did not consider the situation presented here, where a judgment of dissolution is entered but a specific community asset remains undivided for a period of years thereafter. Rather, the commission contemplated that debts would be assigned and property divided promptly "upon dissolution." Accordingly, it cannot seriously be argued that Civil Code section 5120.110, subdivision (a), was intended to preclude levy and

704.740, subd. (a); 8 Witkin, Cal. Procedure, Enforcement of Judgment, *supra*, §§ 228, 230, pp. 207-208, 210; Cal. Practice Guide, *supra*, § 6:756.) The former family residence was a "dwelling" because wife and the minor children lived on the property.

Promptly after a real property dwelling has been levied upon, the levying officer must serve notice on the judgment creditor that the levy has been made and that the property will be released from the levy unless the creditor applies to the court for an order of sale. (§ 704.750, subd. (a); 8 Witkin, *op. cit. supra*, § 231, p. 210; Cal. Practice Guide, *supra*, § 6:762.) It is undisputed that wife received such notice and that she properly applied for an order of sale.

After the creditor files an application for an order of sale, the court sets a time and place for hearing and orders the debtor to show cause why an order for sale should not be made. The hearing must be scheduled not later than 45 days after the application is filed, unless the time is extended for good cause. (§ 704.770, subd. (a); 8 Witkin, *op. cit. supra*, § 232, pp. 211-212; Cal. Practice Guide, *supra*, § 6:771.) The creditor is required to serve notice on the debtor and an occupant of the dwelling. (§ 704.770, subd. (b); Cal. Practice Guide, *supra*, §§ 6:774-6:775.) It is undisputed that wife properly served the required notice.

At the hearing, "the court shall determine whether the dwelling is exempt" from execution as the debtor's homestead and, if so, must determine the dollar amount of the exemption. (§ 704.780, subd. (b); 8 Witkin, *op. cit. supra*, § 233, p. 212; Cal. Practice Guide, *supra*, § 6:777.) A homestead is "the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse [wife no longer is husband's spouse] resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead." (§ 704.710, subd. (c).) Had the civil law and motion department reached the issue, it would have found that the family residence was not husband's homestead because the parties stipulated he had not resided there since February 1989, which was more than a year before the property was levied on in February 1990.

---

execution on any undivided community assets to enforce a postseparation debt, thus substantially impairing what in some cases is a creditor's only remedy. Rather, the legislation was intended to ensure that the debt is ultimately collected from the debtor spouse's assets. Because, in this case, wife obviously has confined her collection efforts to husband's interest in the community property residence, section 5120.110 does not preclude her from levying and executing on his interest. Since the matter must be handled in the family law department, that department will be able to assure that the purpose of the 1984 legislation will be satisfied: i.e., that the debt will be paid from husband's share of the community property.

"If the court determines that the dwelling is not exempt, the court *shall* make an order for sale of the property in the manner provided in Article 6 (commencing with Section 701.510) of Chapter 3." (§ 704.780, subd. (b), italics added.) Wife contends that the court erred in failing to grant her request because section 704.780, subdivision (b), imposes a *mandatory* duty to order the sale of the property. Her argument is facially supported by the section's language which vests no discretion in the trial court. (Compare *Messenger, supra,* 46 Cal.2d at p. 630, recognizing that the court has discretion whether to issue the writ of execution.) Yet, for the reasons we next explain, the civil law and motion department properly declined to issue the order because it correctly perceived that an order for sale would interfere with the family law department's exercise of its retained jurisdiction to value and dispose of the family residence in a manner consistent with the equal division requirements of family law. (Civ. Code, § 4800 et seq.)

## II

■ Neither party devotes sufficient attention to the central issue posed by this appeal—the obligation of one superior court department to refrain from taking an action that interferes with a matter pending before another department of the same court. This obligation was described in an opinion written more than half a century ago.

In *Williams* v. *Superior Court* (1939) 14 Cal.2d 656 [96 P.2d 334], a case was tried in department 12 of the Los Angeles County Superior Court, an appeal was taken, and the court reporter was delinquent in preparing the transcript. The appellant applied for an order to show cause why the reporter should not perform or be suspended as an official reporter and held in contempt. The presiding judge assigned the matter to department 34, which issued the order to show cause. The reporter thereupon obtained an order from the trial judge in department 12 declaring void "for want of jurisdiction" the order issued by department 34.

On appeal, the Supreme Court held that the judge of department 12 exceeded his jurisdiction by interfering with a matter properly before department 34. (14 Cal.2d at pp. 658-662.) The court explained: "The state Constitution (art. VI, sec. 6 [now § 4]) provides for but one superior court in each county, and that for each of said courts at least one judge shall be elected; it further provides that there may be as many sessions of said court at the same time as there are judges elected, appointed or assigned thereto, and that the judgments, orders and proceedings of any one session of the superior court held by any one or more of the judges thereof shall be equally

effectual as though all the judges of said court presided at such session. Accordingly, it has been held that jurisdiction is vested by the Constitution in the court and not in any particular judge or department thereof; and that whether sitting separately or together, the judges hold but one and the same court. [Citation.] It follows, therefore, that where a proceeding has been duly assigned for hearing and determination to one department of the superior court . . . , and the proceeding so assigned has not been finally disposed of therein or legally removed therefrom, it is beyond the jurisdictional authority of another department of the same court to interfere with the exercise of the power of the department to which the proceeding has been so assigned. [Citation.] In other words, while one department is exercising the jurisdiction vested by the Constitution in the superior court of that county, the other departments thereof are as distinct therefrom as other superior courts. [Citation.] If such were not the law, conflicting adjudications of the same subject-matter by different departments of the one court would bring about an anomalous situation and doubtless lead to much confusion. [Citation.]" (*Williams, supra,* 14 Cal.2d at p. 662; see generally 2 Witkin, *op. cit. supra,* Courts, § 19, pp. 217-218.)

Here, the civil law and motion department's issuance of a sale order could have defeated the very purpose for which the family law department had retained jurisdiction. Given wife's admission that she wanted to remain in possession of the property, the civil law and motion judge wisely foresaw that, armed with a sale order, wife likely would purchase husband's interest in the property for the amount of his indebtedness. Were that to happen, the family law department would lose its ability to divide the property equally between the parties and deduct from husband's share the amount of his support arrears. Thus, its reservation of jurisdiction would be defeated as surely as if the civil law and motion department had declared it null and void. (Cf. *Williams, supra,* 14 Cal.2d at pp. 661-662.)[3]

Wife acknowledges that the family law department reserved jurisdiction to value and dispose of the family residence in the context of an equal division of community assets. However, she claims she, "on the other hand, is seeking to enforce her right to collect unpaid support from the property of [husband.] The fact that the court has reserved jurisdiction over that

---

[3] A sale order after execution and levy on a former spouse's interest in a community property residence which is the subject of a family law department deferred sale of home order might defeat other interests for which jurisdiction was reserved over the residence. For example, a sale order might adversely affect the welfare of children of the marriage whose interests are served by the deferred sale of home order. Obviously, this consideration is not applicable here because wife is the creditor and would stay in the home with the children if she obtained the sale order. However, this might not be the result where the creditor seeking the sale order is a third party.

property to assure an equal division of community assets is simply not significant." We disagree.

Although the reservation of jurisdiction is not relevant to wife's abstract right to recover sums legitimately due her, it becomes relevant where, as here, she seeks to collect unpaid support in a manner that adversely affects the purpose for which jurisdiction was reserved. This does not mean that wife's ability to resort to the residence to satisfy husband's indebtedness is suspended until the end of the deferred sale period. It simply means that wife must seek relief from the family law department which has continuing jurisdiction to modify or terminate the deferred sale order and to issue other appropriate relief. (Civ. Code, § 4700.10, subd. (f); see, e.g., *In re Marriage of Howard* (1986) 184 Cal.App.3d 1, 6 [228 Cal.Rptr. 813].)

Civil Code section 4351 provides in pertinent part that "the superior court has jurisdiction to . . . make such orders as are appropriate concerning . . . the settlement of the property rights of the parties . . . ." (See *In re Marriage of Van Hook* (1983) 147 Cal.App.3d 970, 980 [195 Cal.Rptr. 541].)[4] By way of example and not by way of limitation, the family law department has the power to determine the value of the residence and to award it to wife if husband's indebtedness exceeds half of the community's equity. The family law department also has the power to order the residence sold immediately on the open market and to divide the proceeds, with wife receiving an appropriate credit for husband's indebtedness. In fact, for the reasons stated by wife, the family law department even has the power to authorize wife to sell husband's interest at an auction if, in its discretion, it deems that course to be economically sound and otherwise appropriate. We hold only that wife is precluded from seeking relief from a superior court department other than the one having continuing jurisdiction over the property.

Wife's complaint that she is placed in a position inferior to that of a third party creditor lacks merit. ■ Even a third party creditor may be temporarily restrained from seizing property before the court in a dissolution of marriage proceeding if, by doing so, the creditor would frustrate the court's ability to properly dispose of the property. (*Van Hook, supra,* 147 Cal.App.3d at pp. 976-989.) Thus, neither a spouse nor a third party has

---

[4]Had the civil law and motion department issued wife a sale order, husband could have asked the family law department to enjoin her from using it in a way that adversely affected its jurisdiction over the residence. (*Van Hook, supra,* 147 Cal.App.3d at pp. 976-988.) As it was, however, the civil law and motion department properly recognized that the family law department had priority of jurisdiction over the matter and thus declined to enter the requested order.

unlimited access to property that is before the court in a dissolution proceeding.

## III

■ In her application for a sale order, wife unsuccessfully requested an award of reasonable attorneys' fees. She now claims that Civil Code section 4370, subdivisions (c) and (d), entitle her to attorneys' fees for the superior court proceeding and on appeal because she was the custodial parent and supported spouse in this enforcement proceeding.

Civil Code section 4370, subdivision (c), provides: "Notwithstanding any other provision of law, absent good cause to the contrary, the court, upon determining an ability to pay, shall award reasonable attorneys' fees to a custodial parent in any action to enforce an existing order for child support." Subdivision (d) of that section provides: "Notwithstanding any other provision of law, absent good cause to the contrary, the court, upon determining an ability to pay, shall award reasonable attorneys' fees to a supported spouse in any action to enforce an existing order for spousal support."

Neither subdivision expressly requires that the custodial parent or supported spouse must prevail in the enforcement action in order to receive a fee award. Rather, both subdivisions cryptically provide that the fee award shall be made "absent good cause to the contrary." Published cases which have interpreted these subdivisions did not reach the question of whether the supported spouse must prevail in order to receive an award because, in each instance, the spouse had prevailed. (*In re Marriage of Kennedy* (1987) 193 Cal.App.3d 1633, 1642-1643 [239 Cal.Rptr. 151]; *In re Marriage of Crobarger* (1986) 178 Cal.App.3d 56, 58 [223 Cal.Rptr. 480].)

Nonetheless, it has been suggested that one example of "good cause" for denying a fee award is where no support is found due. (Hogoboom & King, Cal. Practice Guide, Family Law (1990) § 14.10.1.) We agree with this observation and further conclude that "good cause" to deny a fee award exists where, as here, the supported party brings an appeal that is without merit. Wife would have been many steps ahead if she had forgone this appeal and simply renewed her application in the family law department as the civil law and motion department advised her to do. Her decision to ignore that advice, bring the matter to this court, and be unsuccessful in her effort to obtain relief, constitutes good cause to deny attorneys' fees on appeal. If wife chooses to renew her enforcement efforts in the family law department, she will have an opportunity to demonstrate her entitlement to attorneys' fees for her efforts in superior court at that time.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Nicholson, J., concurred.