[No. D024756. Fourth Dist., Div. One. Sept. 25, 1998.]

JOANNE SANDRA DALE, Plaintiff and Appellant, v.
THOMAS REDDING DALE et al., Defendants and Respondents.

**COUNSEL**

Mazur & Mazur and Janice R. Mazur for Plaintiff and Appellant.

Stephen Temko, Kim Cheatum, Sharron Voorhees, Alan L. Nobler, Gollub and Golsan, Lorraine C. Gollub, Susan Berke Fogel and Pamela A. Kelley as Amici Curiae on behalf of Plaintiff and Appellant.

Meisenheimer and Herron, Matthew V. Herron, Robert M. Steele and Robert S. Gerstein for Defendants and Respondents.

## OPINION

**NARES, J.**—In this action, Joanne Sandra Dale (Joanne) alleged that during the course of a marital dissolution proceeding her former husband, defendant Thomas Redding Dale (Thomas), and the bookkeeper for his medical practice, defendant Chun Wei Dale (Chun Wei), concealed from Joanne certain community assets related to the practice. Joanne claimed that as a result of the concealment, she was induced to forego spousal support and to stipulate that Thomas be awarded the practice without full knowledge of the assets contained therein. Joanne sought compensatory and punitive damages under a variety of tort theories. The trial court dismissed the action for lack of jurisdiction, concluding Joanne's exclusive remedy lay in seeking to set aside the judgment of dissolution in the family court. We hold that in the absence of a pending dissolution proceeding, a plaintiff who contends she suffered injury because her former spouse tortiously concealed community assets from her, thereby preventing her from fully presenting her case in the dissolution proceeding, is entitled to bring a subsequent tort action based on the alleged concealment. Accordingly, we reverse the order of dismissal.

### FACTUAL AND PROCEDURAL BACKGROUND

Because the trial court dismissed the action based on the pleadings, for purposes of review we accept as true all material facts alleged in the third amended complaint, which was the operative version of the complaint at the time of dismissal. (See *Macias* v. *State of California* (1995) 10 Cal.4th 844, 847, fn. 1 [42 Cal.Rptr.2d 592, 897 P.2d 530].)

Joanne and Thomas were married in 1970. In 1984 Joanne initiated a marital dissolution proceeding. A judgment of dissolution was entered in 1985; however, the court reserved jurisdiction over the disposal of certain community assets. In 1988, pursuant to stipulation, a supplemental judgment was entered disposing of those assets, including Thomas's medical practice, which was awarded to Thomas.

Five years later, in August 1993, while seeking to increase child support for her two children, Joanne obtained from a certified public accountant certain financial documents related to the medical practice. Upon review of those documents, Joanne discovered that financial documents Thomas produced to her in the course of the dissolution proceeding had been altered. According to Joanne, beginning in 1984, when Thomas was served with notice of the dissolution proceeding, Thomas and Chun Wei withheld from billing patients, withheld moneys received as payments to the accounts receivable of the medical practice, and otherwise acted so as to artificially reduce the value of the practice. Chun Wei prepared false ledgers, financial statements, income tax returns and other business records to conceal the withheld billings and payments. Thomas actively concealed the existence of the withheld billings and payments and affirmatively misrepresented to Joanne that his practice was experiencing financial difficulties and was near insolvency. As a result of the concealment of the withheld billings and payments by Thomas and Chun Wei, Joanne was induced to forego spousal support and to stipulate that Thomas be awarded the practice as his separate property.

In December 1993 Joanne commenced this action against Thomas and Chun Wei based on their alleged concealment of Thomas's true income and financial condition. Following several demurrers, Joanne filed a third amended complaint which stated claims against Thomas and Chun Wei on a variety of legal theories, including breach of fiduciary duty, fraud, constructive fraud, intentional and negligent misrepresentation, conversion, conspiracy, fraudulent conveyance, constructive trust, and declaratory relief. Joanne sought both compensatory and punitive damages.

The trial court apparently overruled a demurrer to the third amended complaint based on the "litigation privilege" (Civ. Code, § 47, subd. (b)).[1] Defendants later filed a motion for summary judgment on the same ground, asserting that Joanne's claims were barred by the privilege because the claims were based on statements and communications by parties to a judicial proceeding. The trial court denied the summary judgment motion without prejudice due to a deficiency in defendants' evidence, and defendants later refiled the motion. The court issued a tentative ruling denying the motion and then took the matter under submission following oral argument.

While the motion for summary judgment was still under submission, the case was called for trial. At the outset, the trial court indicated that it would allow the jury to decide the issue of fraud, but it would not allow the jury to

---

[1]The record on appeal does not contain any of the moving or opposing papers related to the demurrer to the third amended complaint.

fix damages. The court indicated that if the jury found fraud, the court would send the case to the family court[2] for "further adjudication." After an extended discussion with counsel during which defense counsel argued the family court had "exclusive jurisdiction" over the matter, the court agreed to allow the parties to brief the issue of the court's jurisdiction. Defendants argued that because the family court had continuing jurisdiction to determine spousal support and to award community assets not previously adjudicated, Joanne's sole remedy lay in that court. Joanne argued that she was entitled to elect between pursuing a remedy in the family court and pursuing an independent civil action for damages and equitable relief.

Following the completion of briefing, the trial court issued an order tentatively dismissing the case on the grounds that the court did not have jurisdiction "to hear matters previously determined and adjudicated by the Family Court" or "to hear damages testimony relating to community property assets including, but not limited to, spousal support and valuation of the medical practice . . . ." The court transferred the case to the presiding judge for a determination of whether the case should be dismissed or transferred to the family court. The presiding judge issued a minute order dismissing the case and later denied a motion for reconsideration. Joanne appeals the dismissal.

DISCUSSION

I

*Subject Matter Jurisdiction*

The parties suggest the issue presented here is whether the trial court had *subject matter* jurisdiction over this action. We disagree. In this case, Joanne seeks an award of compensatory and punitive damages for pecuniary injury she allegedly sustained as a result of defendants' tortious conduct.[3] The superior court has subject matter jurisdiction over a tort action where the

---

[2]As the California Supreme Court explained in *In re Chantal S.* (1996) 13 Cal.4th 196, 201 [51 Cal.Rptr.2d 866, 913 P.2d 1075]: ". . . 'family court' refers to the activities of one or more superior court judicial officers who handle litigation arising under the Family Code. It is not a separate court with special jurisdiction, but is instead the superior court performing one of its general duties."

[3]According to Joanne, she was injured by defendants' conduct because she "was induced to forego spousal support, was deprived of her rightful community interest in [Thomas's medical practice], and was further precluded from fully and fairly litigating the division of [the] concealed assets in the previous dissolution action . . . ."

amount in controversy exceeds $25,000.[4] (See *Ash* v. *Hertz Corp.* (1997) 53 Cal.App.4th 1107, 1109-1110 [62 Cal.Rptr.2d 192]; Code Civ. Proc., § 86.) Likewise, to the extent Joanne seeks declaratory relief as to her interest in the community assets defendants allegedly concealed from her, the superior court has subject matter jurisdiction. (See Code Civ. Proc., § 1060.)

We believe that in dismissing this case for lack of "jurisdiction," the trial court used that term in its broader sense, as articulated by the California Supreme Court in *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715]. ■ In *Abelleira*, the court explained: "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. . . . [¶] But in its ordinary usage the phrase 'lack of jurisdiction' is not limited to these fundamental situations. For the purpose of determining the right to . . . dismissal of an action, a much broader meaning is recognized. Here it may be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief . . . ." (*Id.* at p. 288.)

In ruling that it lacked jurisdiction in this case, the trial court cited several provisions of the Family Code which provide that the court in a dissolution proceeding has continuing jurisdiction to order the payment of spousal support and to award community assets which have not been previously adjudicated. (See Fam. Code, §§ 2552, 2556, 4330, 4336.) Because the damages sought here relate to spousal support and community assets Joanne claims she forfeited as a result of defendants' tortious conduct, the trial court apparently concluded that it had no "jurisdiction" to grant Joanne the relief she sought and that her only recourse was to seek to reopen the dissolution proceeding so she could pursue directly in that proceeding an award of spousal support and a division of the concealed assets. Accordingly, the question presented here is not one of the court's subject matter jurisdiction, but of the court's "jurisdiction" (or power) to grant relief in an action for damages stemming from the tortious concealment of community assets in a dissolution proceeding. For the reasons that follow, we conclude that the court does have the power to grant relief in such an action.

## II

### *Viability of Tort Action for Concealment of Community Assets*

■ In defense of the trial court's ruling, defendants argue that "the Family Court is the only court that can decide issues of community property

---

[4]Here, Joanne alleged the amount of her claim was "unknown at this time, but believed to be in an amount of at least $1,000,000.00."

and spousal support." According to defendants, Joanne is not entitled to maintain a tort action against them based on their allegedly tortious concealment of community assets. They contend Joanne's sole remedy is to move to set aside the supplemental judgment in the dissolution proceeding on grounds of extrinsic fraud.[5]

Joanne acknowledges the continuing jurisdiction of the family court in the dissolution proceeding to award spousal support and divide omitted community assets. She argues, however, that *"continuing* jurisdiction does not equate to *exclusive* jurisdiction" and that she has the right to elect her remedy and proceed with an action for damages. (Original italics.) In support of her argument, Joanne relies primarily on *Worton* v. *Worton* (1991) 234 Cal.App.3d 1638 [286 Cal.Rptr. 410].

In *Worton*, a wife sued her former husband for damages for fraud and conversion, alleging that during the course of their marital dissolution proceeding he concealed the existence of certain excess assets in a pension plan.[6] (*Worton* v. *Worton, supra,* 234 Cal.App.3d at pp. 1643-1644.) The husband obtained summary judgment on the ground that the action against him was barred by the doctrine of res judicata. (*Id.* at pp. 1644-1646.) The Court of Appeal reversed, holding that res judicata did not apply because the husband's "failure to reveal the existence of the excess assets to plaintiff . . . deprived her of an opportunity fully to present her case in the dissolution proceeding." (*Id.* at p. 1649.)

Joanne contends that *Worton* "is on all fours with the instant case in all pertinent respects." We disagree. It is true the court in *Worton* allowed the plaintiff to proceed with her action for damages against her former husband based on his fraudulent concealment of community assets during the dissolution proceeding. However, the court in *Worton* apparently was not presented with, and therefore did not address, the argument defendants make

---

[5]Under case law, after the expiration of the six-month period for seeking relief pursuant to Code of Civil Procedure section 473 on grounds of mistake, inadvertence, surprise or excusable neglect, an otherwise valid and final judgment adjudicating support or division of community property could be set aside only if it was obtained through extrinsic fraud. (See *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068 [202 Cal.Rptr. 116].) For judgments entered on or after January 1, 1993, Family Code section 2120 et seq. provides a comprehensive statutory scheme for setting aside such judgments on grounds of actual fraud, perjury, duress, mental incapacity, or mistake. (See *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 136-137 [63 Cal.Rptr.2d 894].) Because the judgment at issue here was entered in 1988, we have no occasion to address the effect of Family Code section 2120 et seq. on the viability of a tort action for concealment of community assets.

[6]The wife also sued her former attorney for legal malpractice for negligently failing to discover the existence of the excess assets. The Court of Appeal affirmed a summary judgment in favor of the attorney on the ground that wife's claim was barred by the statute of limitations.

here: namely, that a plaintiff in such a case is not entitled to pursue an action for damages but is instead limited to seeking relief from the family court by moving to set aside the judgment of dissolution. (See *d'Elia* v. *d'Elia* (1997) 58 Cal.App.4th 415, 431 [68 Cal.Rptr.2d 324] ["The *Worton* court never considered the legal propriety of a tort claim based on the concealment of a community asset, as distinct from a traditional set aside action based on extrinsic fraud."].) ▮ "[C]ases are not authority for propositions not considered." (*McDowell & Craig* v. *City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344].) Accordingly, the decision in *Worton* is of little assistance in deciding the primary issue before us.

Joanne also relies on *In re Marriage of McNeill* (1984) 160 Cal.App.3d 548 [206 Cal.Rptr. 641], disapproved on other grounds in *In re Marriage of Fabian* (1986) 41 Cal.3d 440 [224 Cal.Rptr. 333, 715 P.2d 253]. In *McNeill*, the trial court consolidated a husband's action against his wife for damages based on fraud with the couple's dissolution proceeding. In that case, however, the wife did not argue that her husband could not pursue his action for damages. Rather, she simply argued that the court erred in consolidating the two proceedings. (*Id.* at pp. 556-558.) Consequently, like *Worton*, *McNeill* provides little direct assistance in deciding whether Joanne may maintain an action for damages for concealment of community assets.[7]

▮ Although *McNeill* is of little direct assistance, it does illustrate the general rule that one spouse may sue the other for intentional or negligent torts.[8] (See *Nagy* v. *Nagy* (1989) 210 Cal.App.3d 1262, 1268 [258 Cal.Rptr. 787].) The question posed by this case is whether that general rule does not or should not apply when the tortious conduct, which provides the basis for the action, consists of the concealment of community assets in a dissolution proceeding, and the damages the injured spouse claims relate to spousal support and community assets allegedly forfeited as a result of that conduct. We are aware of no authority imposing any such limitation and find no basis for doing so ourselves.

[7]For similar reasons, the decision in *McDaniel* v. *McDaniel* (1969) 275 Cal.App.2d 927 [80 Cal.Rptr. 837], cited by amicus curiae San Diego County Certified Family Law Specialists, is of little assistance in our inquiry. In *McDaniel*, the husband appealed from a judgment in favor of the wife in an action for misrepresentations the husband made to the wife in connection with a property settlement agreement in an action for divorce. (*Id.* at p. 929.) The husband contended that the evidence did not support the trial court's findings and that the damages were excessive. (*Ibid.*) He apparently did not contend that the wife could not maintain a tort action against him.

[8]Even before the California Supreme Court abrogated interspousal immunity for personal torts in 1962 (see *Self* v. *Self* (1962) 58 Cal.2d 683 [26 Cal.Rptr. 97, 376 P.2d 65]; *Klein* v. *Klein* (1962) 58 Cal.2d 692 [26 Cal.Rptr. 102, 376 P.2d 70]), it was established that interspousal immunity did not apply to property torts such as fraud. (See *Langley* v. *Schumacker* (1956) 46 Cal.2d 601, 603-604 [297 P.2d 977].)

Defendants contend the decision in *d'Elia* v. *d'Elia, supra,* 58 Cal.App.4th 415 "disposes of [Joanne's] claim to an independent tort action for damages resulting from the allegedly fraudulent inducement of her property settlement with her former husband . . . ." Defendants are mistaken. In *d'Elia,* the wife claimed that in the course of a dissolution proceeding her former husband made misrepresentations to her in connection with the disposition of certain community stock. (*Id.* at p. 420.) The wife brought an action for damages against the husband, alleging statutory claims for violation of state securities laws, as well as common law claims for intentional and negligent misrepresentation and breach of fiduciary duty. (*Id.* at pp. 422-423.) On appeal from a judgment in favor of the wife, the appellate court reversed the judgment on the statutory claims, holding that California's securities laws do not apply to allocations of community stock pursuant to marital settlement agreements. (*Id.* at pp. 423, 432-433.) The court did *not* hold that the wife was barred from recovering on her common law claims against the husband. Indeed, the court expressly noted that because the husband did not challenge the wife's "right to a recovery per se under the [common law] causes of action, . . . we do not address [the wife's] right to a recovery under those causes of action . . . ." (*Id.* at p. 423, italics omitted.) Accordingly, like *Worton, d'Elia* does not resolve the issue before us.[9]

In framing arguments to justify the trial court's dismissal of this action, defendants for the most part fail to acknowledge that this case is an action for damages resulting from allegedly tortious conduct. Instead, defendants characterize this case as an attempt by Joanne to relitigate spousal support and community property issues already resolved in the dissolution proceeding. Defendants contend that "once the Family Court acquires jurisdiction over community property it retains exclusive jurisdiction over that property." Citing *Williams* v. *Superior Court* (1939) 14 Cal.2d 656 [96 P.2d 334] and its progeny, defendants suggest that Joanne's action for damages is barred because the family court already exercised jurisdiction over Thomas's medical practice in the dissolution proceeding, and therefore Joanne's sole remedy is to move to set aside the judgment in that proceeding.

The cases on which defendants rely do not support their argument. In *Williams* v. *Superior Court, supra,* 14 Cal.2d 656, the California Supreme Court held "that where a proceeding has been duly assigned for hearing and determination to one department of the superior court by the presiding judge of said court in conformity with the rules thereof, and the proceeding so assigned has not been finally disposed of therein or legally

---

[9] *d'Elia* is also distinguishable from this case because the wrongful conduct at issue in *d'Elia* did not involve the actual concealment of community property, as Joanne has alleged here. (See *d'Elia* v. *d'Elia, supra,* 58 Cal.App.4th at p. 431.)

removed therefrom, it is beyond the jurisdictional authority of another department of the same court to interfere with the exercise of the power of the department to which the proceeding has been so assigned. [Citation.] In other words, while one department is exercising the jurisdiction vested by the Constitution in the superior court of that county, the other departments thereof are as distinct therefrom as other superior courts. [Citation.] If such were not the law, conflicting adjudications of the same subject-matter by different departments of the one court would bring about an anomalous situation and doubtless lead to much confusion." (*Id.* at p. 662.)

In *In re Marriage of Schenck* (1991) 228 Cal.App.3d 1474 [279 Cal.Rptr. 651], the Court of Appeal applied the rule stated in *Williams* to a dissolution proceeding. The family law department had entered an order which awarded a wife "exclusive occupancy of the former family residence for three years and expressly reserved jurisdiction over its ultimate 'valuation and disposition.' " (*In re Marriage of Schenck, supra,* at p. 1476.) Thereafter, the wife sought an order from the law and motion department allowing the sale of the husband's community property interest in the residence to satisfy accumulated child and spousal support arrears. (*Id.* at pp. 1476-1477.) The law and motion department refused to issue the order and advised the wife to bring the matter before the family law department. (*Id.* at p. 1477.) Citing *Williams,* the Court of Appeal affirmed, holding that the family law department had "priority of jurisdiction" over the property and thus the wife was required to seek relief from that department in the first instance. (*In re Marriage of Schenck, supra,* at pp. 1482-1484, fn. 4.)

In *Askew* v. *Askew* (1994) 22 Cal.App.4th 942 [28 Cal.Rptr.2d 284], during the pendency of a dissolution proceeding, a husband won a judgment against his wife for fraud based on allegations that he had purchased certain properties with his separate funds but had put title to the properties in joint tenancy in reliance on certain misrepresentations made by the wife. (*Id.* at pp. 948-952.) As part of the judgment, the trial court imposed constructive trusts on the wife's interests in the properties. (*Id.* at p. 952.) After holding that the husband's recovery could not be premised on the wife's false statements of love and sexual desire because of California's anti-heart-balm statutes, the Court of Appeal addressed whether the trial court had jurisdiction to consider the "unsexy" remainder of the case. (*Id.* at pp. 961-964.) Citing *In re Marriage of Schenck, supra,* 228 Cal.App.3d 1474, the appellate court concluded that the trial court in the fraud action "in effect usurped the power and obligation of the family law court [in the pending dissolution proceeding] to determine the character of the five properties. . . . By imposing trusts on [the wife's] ostensible interests in the five properties, the civil court was removing from the family law court the power to characterize

and divide those properties as community. Given that the family law court *already* had subject matter jurisdiction to divide the community property, the civil trial court had no jurisdiction to so act." (*Askew* v. *Askew, supra,* at p. 962, original italics.)

██ Taken together, *Williams, Schenck,* and *Askew* stand for the proposition that when a dissolution proceeding is pending in the family court, another department of the superior court may not act so as to interfere with the family court's exercise of its powers in that proceeding. (See, e.g., *Glade* v. *Glade* (1995) 38 Cal.App.4th 1441, 1449-1455 [45 Cal.Rptr.2d 695].) That proposition is inapposite here, however, because at the time Joanne commenced this action for damages, the dissolution proceeding had been finally disposed of by means of a final judgment. There is nothing in the record to indicate that during the pendency of this action, the family court was exercising its power over community assets or spousal support in the dissolution proceeding, or that any issue related to those matters remained to be disposed of by the family court. Accordingly, allowing Joanne to proceed with this action for damages would not interfere with the family court's exercise of its powers in that proceeding.

### III

#### *Res Judicata*

To the extent defendants argue the dismissal of Joanne's action for damages was justified on the basis of res judicata, we disagree. To that argument, the decision in *Worton* speaks directly. ██ As the *Worton* court explained: " 'The doctrine of res judicata, whether applied as a total bar to further litigation or as collateral estoppel, rests upon the sound policy of limiting litigation by preventing a party who has had *one fair adversary hearing* on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.' " (*Worton* v. *Worton, supra,* 234 Cal.App.3d at pp. 1647-1648, quoting *Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 257 [142 Cal.Rptr. 414, 572 P.2d 28], original italics.) Thus, a spouse who conceals the existence of community assets, thereby depriving the other spouse of the opportunity fully to present his or her case in a dissolution proceeding, cannot claim that the judgment of dissolution bars a subsequent tort action based on that failure. (*Worton* v. *Worton, supra,* at pp. 1647-1649.)

### IV

#### *Litigation Privilege*

Defendants also attempt to justify the dismissal of Joanne's action for damages on the basis of the "litigation privilege." (Civ. Code, § 47, subd.

(b).) According to defendants, Joanne's claims are barred by the privilege because they are "based entirely on statements, communications and publications by parties and their counsel to a judicial proceeding." We conclude, however, that the litigation privilege issue is not properly before us. As noted above, at the time the trial court dismissed the action for lack of jurisdiction, defendants' motion for summary judgment based on the litigation privilege was still under submission. The trial court must be allowed to rule on that motion in the first instance. Accordingly, we do not reach the issue of whether the litigation privilege applies to this case.[10]

V

*Public Policy*

Finally, to the extent defendants suggest Joanne should be barred from pursuing her action for damages for reasons of public policy, we disagree. It is true that in some instances the courts have concluded that allowing a remedy in tort would be contrary to public policy. (See, e.g., *Nagy* v. *Nagy*, *supra*, 210 Cal.App.3d at pp. 1269-1270.) This is not such a case.

Defendants suggest that because "Civil Court judges are not trained to render decisions in this field of expertise, the Family Court is the only court that can decide issues of community property and spousal support." That the damages Joanne seeks are related to forfeited spousal support and community assets—matters with which family court judges are undoubtedly more familiar—does not alone justify limiting Joanne to those remedies that may be available in the dissolution proceeding. We see no reason why a properly instructed jury cannot be trusted to determine the value of the pecuniary injury suffered by a plaintiff who alleges her former spouse tortiously concealed community assets from her in the dissolution proceeding. (See *d'Elia* v. *d'Elia*, *supra*, 58 Cal.App.4th at pp. 423, 433 [affirming an award of $3.9 million on common law claims against former spouse for misrepresenting value of community stock].)

Defendants also contend "public policy requires that a party be secure from an endless stream of litigation." Recently, the California Supreme Court discussed similar policy concerns in a case involving intentional spoliation of evidence. (*Cedars-Sinai Medical Center* v. *Superior Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511].) ▉ In *Cedars-Sinai*, the court held ". . . there is no tort remedy for the intentional

---

[10]We do note, however, that the trial court tentatively denied defendants' motion for summary judgment based on the litigation privilege on the ground that there were triable issues of fact as to the application of the privilege.

spoliation of evidence by a party to the cause of action to which the spoliated evidence is relevant, in cases in which, as here, the spoliation victim knows or should have known of the alleged spoliation before the trial or other decision on the merits of the underlying action." (*Id.* at pp. 17-18.) In so holding, the court noted that "using tort law to correct misconduct arising during litigation raises policy considerations not present in deciding whether to create tort remedies for harms arising in other contexts." (*Id.* at p. 8.) The court detailed several policy considerations which weighed against recognizing a cause of action for "intentional first party spoliation that is or reasonably should have been discovered before trial of the underlying action," including "the prohibition against attacking adjudications on the ground that evidence was falsified or destroyed," "the strong policy favoring use of nontort remedies rather than derivative tort causes of action to punish and correct litigation misconduct," and "the uncertainty of the fact of harm in spoliation cases." (*Id.* at pp. 8, 11, 13.)

Although we recognize the "important policies against creating tort remedies for litigation-related misconduct" (*Cedars-Sinai Medical Center* v. *Superior Court, supra,* 18 Cal.4th at p. 4), we conclude that those policies do not compel the same result here as they did in *Cedars-Sinai.* First, the court's concern in *Cedars-Sinai* with promoting "finality in adjudication" (*id.* at p. 10) derived primarily from the fact that the destruction of evidence is generally considered intrinsic rather than extrinsic fraud, which cannot serve as a basis for setting aside a final judgment. (*Ibid.*) The court was apparently concerned with the propriety of allowing the maintenance of a tort action under circumstances where the underlying judgment cannot be challenged. (See *Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 636 [99 Cal.Rptr. 393] [holding that facts insufficient to constitute a basis for setting aside a prior judgment cannot serve as the basis for an action for damages on a tort theory].) That concern is not an issue here because the concealment by one party of the existence of a community asset constitutes extrinsic rather than intrinsic fraud, which can serve as a basis for setting aside an otherwise valid and final judgment. (See, e.g., *In re Marriage of Stevenot, supra,* 154 Cal.App.3d at pp. 1068-1069.)

Second, the court's reliance in *Cedars-Sinai* on the adequacy of "nontort remedies that seek to punish and deter the intentional spoliation of evidence" is not compelling here because of the different circumstances involved. (*Cedars-Sinai Medical Center* v. *Superior Court, supra,* 18 Cal.4th at p. 11.) Most of the remedies discussed by the court in *Cedars-Sinai*—the adverse evidentiary inference, discovery sanctions, and State Bar disciplinary sanctions—do not apply here, either because the alleged wrongful conduct was not discovered during the course of the dissolution proceeding or because

there is no allegation that Thomas's counsel in the dissolution proceeding participated in the alleged concealment of community assets.

Setting aside the supplemental judgment adjudicating Joanne's support rights and interest in the community property would not provide Joanne with a remedy equivalent to that traditionally available to a person injured by intentional tortious conduct. ■ As the court observed in *d'Elia* v. *d'Elia*, *supra*, 58 Cal.App.4th 415, the family court does retain "the power to impose sanctions on a party whose misrepresentations required litigation to undo any agreement or judgment." (*Id.* at p. 418, citing Fam. Code, § 271.) That power, however, is limited to awarding attorney's fees and costs. (See Fam. Code, § 271, subd. (a).) The family court has no power to award punitive damages. (See *In re Marriage of McNeill, supra*, 160 Cal.App.3d at pp. 557-558.)

Finally, the court's concern in *Cedars-Sinai* with "the uncertainty of the fact of harm in spoliation cases" is not present here. (*Cedars-Sinai Medical Center* v. *Superior Court, supra*, 18 Cal.4th at p. 13.) Joanne's tort claims are not premised on the destruction of evidence, but on the alleged concealment of community assets, which she claims was facilitated by the alteration of various documents produced during the dissolution proceeding. In seeking to prove her claims, Joanne will have to offer evidence of the assets allegedly concealed, and the jury will decide from that evidence whether Joanne suffered harm as a result of the alleged concealment. There is no basis for concluding that here, as in spoliation cases, ". . . the fact of harm will be irreducibly uncertain." (*Ibid.*)

The concern that permitting tort actions under circumstances such as those present here will result in a flood of frivolous litigation does not justify limiting a victimized spouse to the remedies available in family court. As the Supreme Court has observed, arguments proposing a limit on tort actions because of an anticipated flood of trifling lawsuits "are not relevant in an intentional tort case." (*Self* v. *Self, supra*, 58 Cal.2d at p. 691.) Even in a case premised on allegations of negligence, " '[t]he court should not decline to entertain a meritorious action against a spouse . . . because of the dubious apprehension that in some future case trifling domestic difficulties may become the subject of litigation.' " (*Klein* v. *Klein, supra*, 58 Cal.2d at p. 694, quoting *Spellens* v. *Spellens* (1957) 49 Cal.2d 210, 241 [317 P.2d 613] (conc. and dis. opn. of Schauer, J.).)

Furthermore, there is no evidence before us that any such inundation will occur. Indeed, San Diego County Certified Family Law Specialists (the association), a countywide association of specialists in this area, contends

otherwise. In its amicus curiae brief, the association contends the "fraudulent fabrication of documents and perjured testimony" is "the exception rather than the rule" in family law cases. The association further notes that "[c]ontingency attorney fee[] arrangements will screen the specious claims, if any, from the meritorious." Finally, the association contends "a decision that permits tort litigation when fraud is present will ultimately limit fraudulent conduct and the number of subsequent lawsuits."

We agree that public policy supports permitting rather than prohibiting tort actions in circumstances such as those alleged to be present here. Allowing a spouse who intentionally concealed the existence of community assets during the course of a dissolution proceeding to avoid liability for punitive damages likely would encourage such tortious behavior. A spouse would be able to practice concealment with little, if any, risk. (Cf. *Resnik* v. *Superior Court* (1986) 185 Cal.App.3d 634, 637 [230 Cal.Rptr. 1].) Traditional tort remedies, including the risk of an award of punitive damages, should have a greater deterrent effect than the remedies available in family court.

In summary, we find no policy reason to prohibit a spouse like Joanne from pursuing a tort action for damages against her former spouse based on the alleged concealment of community assets. In the absence of a pending dissolution proceeding in which the parties' property and support rights have yet to be finally determined,[11] a plaintiff who contends she suffered injury because her former spouse tortiously concealed community assets from her, thereby preventing her from fully presenting her case in the dissolution proceeding, is entitled to bring a subsequent tort action based on the alleged concealment.

## DISPOSITION

The order of dismissal is reversed. Appellant to recover costs on appeal.

Benke, Acting P. J., and Haller, J., concurred.

A petition for a rehearing was denied October 20, 1998, and respondents' petition for review by the Supreme Court was denied January 13, 1999. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

[11]We express no opinion as to whether a tort action may be maintained when the dissolution proceeding has not yet resulted in a judgment finally adjudicating the parties' property and support rights.