Filed 11/20/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| In re the Marriage of ROSEMARY and JAMES SAWYER.<br><br>ROSEMARY SAWYER,<br><br>    Respondent,<br><br>    v.<br><br>JAMES SAWYER,<br><br>    Appellant;<br><br>SANTA CRUZ COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>    Appellant. | H046558<br>(Santa Cruz County<br> Super. Ct. No. FL007773) |


In 2001, a Minnesota state court ordered appellant James Sawyer to pay $89,582.15 in child support arrears to his ex-wife, respondent Rosemary Sawyer,[1] for their two children. James was by then living in California, and in 2005 the Minnesota order was registered for enforcement purposes in Santa Cruz County Superior Court pursuant to the Uniform Interstate Family Support Act.

---

[1] The trial court order at issue here refers to James's ex-wife as Rosemary Sawyer. In some places, the record references her as Rosemary Hildebrandt. For clarity, we refer to James and Rosemary by their first names. Rosemary has not participated in these appeals.

In 2018, in connection with registration in California of a renewed judgment from Minnesota, the trial court in Santa Cruz County stayed enforcement of a portion of James's child support arrears determined by the 2001 Minnesota order because the children had intermittently lived with James between 1993 and 2002. The trial court found the remainder of the arrears enforceable against James. Both James and appellant Santa Cruz County Department of Child Support Services (the Department), which has assisted in the enforcement and collection of James's child support arrears, have appealed the trial court's 2018 order.

The Department contends that the trial court lacked authority under the Uniform Interstate Family Support Act to stay the arrears owed by James because the 2001 Minnesota order at issue was registered and confirmed in California in 2005, and James did not timely challenge its registration. We agree and reverse the portion of the 2018 order staying enforcement of $28,890 of the arrears. James appeals the portion of the trial court's order finding that the remainder of the arrears ($60,692.15) was enforceable. We reject his claims of error and affirm that portion of the 2018 order.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Background*[2]

James and Rosemary were married from 1978 to 1989 and have two (now adult) sons together: the elder born in 1977 (older son) and the younger in 1984 (younger son). James and Rosemary divorced in Minnesota, and a judgment and decree of dissolution ending their marriage was entered in that state in January 1989. James was ordered by the Minnesota court to pay $1,000 per month in child support to Rosemary.

Shortly following the divorce, James moved to Santa Clara County, California. Thereafter, Rosemary requested assistance from the State of California in enforcing the

_____

[2] We take these undisputed background facts from James's sworn testimony at the October 23, 2018 hearing, which preceded the December 18, 2018 order at issue in these appeals.

Minnesota child support order. In January 1991, child support enforcement proceedings began in Santa Clara County. As a result of those proceedings, James was either ordered to or stipulated to pay $12,000 in child support arrears and was ordered to pay $100 per month in fulfillment of that obligation.

A few years later, in June 1993, older son, then about 16 years old, moved from Minnesota to California and lived with James until July 1994. James did not seek a modification of the ongoing child support order after older son moved in with him. James testified that modifying the support order "wasn't on [his] radar" at that point and "it seemed to [him] that the whole accounting of child support would be more sensibly done at the end rather than in the middle."

Around 1997, James moved to Santa Cruz County, and the enforcement proceeding against him was transferred to the Santa Cruz County Superior Court.[3] In 1999, younger son moved to California and lived with James for several years. Apparently around this 1999 time period, James asked his Minnesota attorney to notify the Minnesota court that younger son was living with him and was no longer living with Rosemary. However, James did not then seek a modification of the ongoing child support order in the Minnesota court. James testified that his attorney asked or tried to get Rosemary to sign a stipulation to the effect that younger son was in his primary custody, but that effort was unsuccessful.

B. *Procedural History*

1. 2001 Court Proceedings in Minnesota

On February 13, 2001, a Minnesota district court issued the child support order that underlies the appeals before us (the Minnesota 2001 order). Prior to the issuance of that order, the parties appeared at a hearing in Minnesota in January 2001. Rosemary,

---

[3] We take judicial notice of the 1997 notice of receipt filed in Santa Cruz County and 1997 motion and order transferring cause.

3

Rosemary's attorney, and James's attorney Robert Hajek appeared. James was not personally present.

The Minnesota 2001 order amended the 1989 judgment and decree of dissolution, awarded physical custody of younger son to James, and ordered Rosemary going forward to pay James child support for younger son. The order also addressed the amount of child support arrears that James owed Rosemary. The order stated that Rosemary had "alleged child support arrears owing by [James] to [Rosemary] in the amount of $89,582.15" and declared that "judgment shall be entered on said arrears unless, within sixty (60) days from the date of this Order, the parties agree that a different amount is owing, or [James] proceeds before this Court by Notice of Motion and Motion within that sixty (60) day period." This arrears amount was apparently not challenged by either party within the 60 days and, in April 2001, the Minnesota district court entered judgment against James for child support arrears in the amount of $89,582.15.

2. 2005 Proceedings in California

In 2005, the Minnesota 2001 order was registered in California.[4] The notice of registration reflects that the Santa Cruz County Superior Court clerk sent James a copy of the order on March 18, 2005. The notice advised James that he had 25 days from the mailing date to request a hearing to contest the validity or enforcement of the registered order. There is no evidence in the record that James contested or took any court action in connection with the 2005 registration in California of the Minnesota 2001 order requiring him to pay $89,582.15 in child support arrears to Rosemary.

---

[4] The Minnesota order that was registered in California was the February 2001 conditional order and not the judgment entered in April 2001. It is not clear on this record why the April 2001 judgment was not registered in California, but neither party has raised this issue in the trial court or in this court on appeal. We will therefore assume, as do the parties, that the February 2001 order was the appropriate order to register in California.

4

3. 2007-2009 Court Proceedings in Minnesota and 2009 Registration in California

In 2007, James appeared before a Minnesota child support magistrate to challenge the 2001 Minnesota order issued by the district court. James sought in the Minnesota court a determination that he owed no arrears to Rosemary. After various continuances, James withdrew his motion. Approximately one year later, in late 2008, James again moved for a determination that he owed no arrears to Rosemary.

In early January 2009, the Minnesota child support magistrate determined that James's motion amounted to a motion to vacate the 2001 judgment, decided that it did not have jurisdiction to vacate a final judgment entered in Minnesota district court, and dismissed James's motion. In its written order, the magistrate found that "[b]ased upon the order dated February 13, 2001, there was a judgment entered in this matter determining arrears as of January 31, 2001." The magistrate decided it was foreclosed from redetermining those arrears and dismissed James's motion.

According to the Minnesota Court of Appeals, which affirmed the child support magistrate's order in an unpublished opinion, James "moved for a determination that he owed no arrears to [Rosemary] so that the state of California would terminate proceedings against him to collect the 2001 Minnesota judgment." (*Sawyer v. Sawyer* (Minn.Ct.App., Sept. 22, 2009, No. A09-0222) [2009 WL 2998093].) The Court of Appeals described James's motion as an attempt "to relitigate an issue that was resolved eight years ago by the district court." (*Id.* at p. 5.)

The 2009 order issued by the Minnesota child support magistrate was registered that year for enforcement in Santa Cruz County Superior Court. The court clerk served James with the registration statement and a copy of the January 2009 order. According to the 2009 notice of registration, James then owed Rosemary $98,476.19 in child support arrears. There is no evidence that James contested or took any court action in California in connection with the 2009 registration.

5

#### 4.  2013-2018 California Trial Court Proceedings

In 2013, the Department filed in Santa Cruz County Superior Court a request for an order to show cause and affidavit for contempt against James related to his failure to make child support payments.  James moved in the Santa Cruz County Superior Court for equitable relief, claiming the arrears calculation in Minnesota was incorrect.  James requested that the trial court order an "accounting" and "credit" him with payments he made.  James contended that the Department had failed "to reconcile [James's] payments and credits" with the Minnesota 2001 order and asserted such a reconciliation would have "demonstrated satisfaction of the original child support order."  James requested that the trial court order the Department to stop collecting any payments on the alleged arrears.

At a hearing in March 2014, the trial court denied James's request to recalculate the arrears previously adjudicated in Minnesota and for equitable relief.  The trial court stated that it did "not believe that California has subject matter jurisdiction over the issue that has already been determined by another forum" and was required to "defer to that judgment."

Nearly four years later, in 2018 the clerk of the Santa Cruz County Superior Court notified James that a new Minnesota order, titled "Notice of Entry and Docketing of Judgment," had been registered in the superior court.  The Minnesota order stated James owed $139,990.21 in child support arrears as of May 21, 2018.[5]  James requested a hearing in Santa Cruz County Superior Court and sought vacatur of the registration of the order.

---

[5] The Department in its briefing asserts that the 2018 judgment was a "renewal" of judgment, as a judgment otherwise lapses and becomes unenforceable after 10 years pursuant to Minnesota law.  In 2018, the Department's position before the trial court was that the $139,990.21 stemmed from the $89,582.15 established at the January 29, 2001 hearing in Minnesota and included interest that had since accrued pursuant to Minnesota law which calculated interest by the prime market rate minus certain credits for payments James had made.

6

In his opposition to enforcement of the 2018 Minnesota support order, James asserted the arrears figure of $89,582.15 was overstated, he had "no warning" that the January 29, 2001 hearing would be used to determine arrears, and his attorney in Minnesota "did not directly communicate to him the intentions of the Minnesota family law court referee." James stated he only "first became aware of the $89,582.15 arrears judgment several years after it was entered, perhaps around 2005, when the Minnesota Department of Child Support sought to register the judgment in California."

The Department submitted a written response in which it argued James was barred from attacking the amount of arrears determined in 2001 because he had failed to timely challenge the registration of that judgment in California in 2005.[6] The Department maintained that James could only contest the arrears that accrued between the last registration (in 2009) and the current registration (in 2018) but had provided no evidence of any payments made in that period that the Department had not credited to him.

A contested hearing occurred before the trial court on October 23, 2018, presided over by the same judicial officer who had in 2014 denied James's equitable request to recalculate arrears for the same time period. At the October 23, 2018 hearing, James testified about various topics, including the time periods that his sons lived with him in California. James stated he had retained Bob Hajek, a lawyer in Minnesota, to help handle the proceedings in Minnesota, but James was not aware in 2001 of the January 29, 2001 hearing. James asserted he did not learn about the 2001 hearing or the arrears amount until several years later. He could not recall exactly when he learned about the over $89,000 in arrears but "it had to have been" in 2005 or 2006. James detailed his efforts in 2007 and 2008 in Minnesota to overturn the arrears calculation, which included his unsuccessful appeal to the Minnesota Court of Appeals.

---

[6] Rosemary did not participate in the 2018 proceedings.

7

In the course of the 2018 hearing, the trial court found that there was no merit to James's claim that the Minnesota court did not have personal jurisdiction over him, despite James's testimony that he was unaware of the 2001 proceedings, because James had then been represented by an attorney who participated in them. Turning to his claim that the arrears figure was incorrect, the trial court stated it was "inclined to grant some equitable relief" and believed it had the authority to do so pursuant to its powers under California law to enforce the Minnesota judgment.

On December 18, 2018, the trial court issued the written order at issue on appeal. The trial court denied James's request to vacate registration of the support order filed on June 28, 2018 but ordered the Department "to stay partial enforcement of the registered orders, according to the attached findings." The attached findings consist of a one-page chart itemizing the arrears amounts stayed by the trial court. The trial court's findings include that the Minnesota order was signed on February 13, 2001 in the amount of $89,582.15 and was "subsequently registered in California." The attachment details the particular years that either older son or younger son lived with James and the portion of the total arrears that would be stayed for that time period. Adding these various amounts, the trial court ordered that $28,890 in arrears be stayed.

The trial court's order stated that $28,890 in arrears was "stayed on equitable grounds during periods of time father had sole custody of children" and that "California courts are free to apply its own law regarding the methods by which the judgment is to be enforced." The trial court concluded that the balance of the $89,582.15 (that is $89,582.15 minus $28,890, or $60,692.15) could be enforced against James.

Both the Department and James timely appealed the trial court's December 18, 2018 order.

## II. DISCUSSION

"A trial court child support order is reviewed under the abuse of discretion standard of review, and the trial court's findings of fact in connection with a child support

order under the substantial evidence standard of review. [Citation.] 'To the extent the trial court's decision reflects an interpretation of a statute, it presents a question of law that we review de novo.' " (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 906–907.)

The Department argues the trial court lacked authority to award James equitable relief by staying enforcement of a portion of the arrears. In his appeal, James contends that the trial court erred (1) by refusing to stay the remainder of the arrears determined in Minnesota because the Minnesota court did not have personal jurisdiction over him when it entered the 2001 Minnesota order and (2) by failing to continue the proceeding to permit him to present additional evidence about all the equitable "off-sets" he was due.

We begin our consideration of these appeals with the applicable provisions of California law implementing the Uniform Interstate Family Support Act.

A. *The Uniform Interstate Family Support Act*

The Uniform Interstate Family Support Act (UIFSA), now codified at Family Code sections 5700.101 et seq.,[7] was enacted in California in 1997.[8] (See *County of Los Angeles Child Support Services Dept. v. Superior Court* (2015) 243 Cal.App.4th 230, 237.) The UIFSA " 'governs, inter alia, the procedures for establishing, enforcing and modifying child support orders in cases in which more than one state is involved.' " (*In re Marriage of Connolly* (2018) 20 Cal.App.5th 395, 402.) "The goal of UIFSA is to ensure that ' "only one valid support order may be effective at any one time" [citation], even though the parties and their children may move from state to state.' " (*Ibid.*) "Together with the Federal Full Faith and Credit for Child Support Orders Act (FFCCSOA) (28 U.S.C. § 1738B), the UIFSA ensures that in every case only one state

---

[7] Unspecified statutory references are to the Family Code.

[8] Prior to 2016, the UIFSA was codified at sections 4900 et seq. The pertinent provisions relating to the registration and confirmation of out-of-state child support orders have remained largely unchanged since the UIFSA's adoption in 1997. (Compare §§ 5700.606–5700.608, with former §§ 4955–4956.)

9

exercises jurisdiction over child support at any given time." (*In re Marriage of Crosby & Grooms* (2004) 116 Cal.App.4th 201, 206.)

The UIFSA allows a support order from another state to be registered for enforcement in California. (§ 5700.601 [formerly § 4950]; *Scheuerman v. Hauk* (2004) 116 Cal.App.4th 1140, 1143–1144.) When the arrears order at issue here was registered in California in 2005, former section 4955 (now codified at section 5700.606) stated: "(a) A nonregistering party seeking to contest the validity or enforcement of a registered order in this state shall request a hearing within 20 days after notice of the registration. The nonregistering party may seek to vacate the registration, to assert any defense to an allegation of noncompliance with the registered order, or to contest the remedies being sought or the amount of any alleged arrearages pursuant to Section 4956. [¶] (b) *If the nonregistering party fails to contest the validity or enforcement of the registered order in a timely manner, the order is confirmed by operation of law.* [¶] (c) If a nonregistering party requests a hearing to contest the validity or enforcement of the registered order, the registering tribunal shall schedule the matter for hearing and give notice to the parties of the date, time, and place of the hearing." (Italics added.)

Section 5700.607, subdivision (a), sets forth the sole grounds on which a party can seek to vacate registration of a support order. Two of those grounds are that "the issuing tribunal lacked personal jurisdiction over the contesting party" and that "full or partial payment has been made." (§ 5700.607, subd. (a)(1), (6).)[9]

---

[9] Former section 4956 contained these same two grounds and stated in full: "(a) A party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving one or more of the following defenses: [¶] (1) The issuing tribunal lacked personal jurisdiction over the contesting party. [¶] (2) The order was obtained by fraud. [¶] (3) The order has been vacated, suspended, or modified by a later order. [¶] (4) The issuing tribunal has stayed the order pending appeal. [¶] (5) There is a defense under the law of this state to the remedy sought. [¶] (6) Full or partial payment has been made. [¶] (7) The statute of limitation under Section 4953 precludes enforcement of some or all of the arrearages. [¶] (b) If a party presents evidence

Section 5700.608 (formerly section 4957) states: "Confirmation of a registered support order, whether by operation of law or after notice and hearing, precludes further contest of the order with respect to any matter that could have been asserted at the time of registration."[10]

B. *The Department's Appeal*

The Department contends that, because James failed to timely challenge the 2005 and 2009 registrations in California, the amount of arrears reflected in the 2001 Minnesota order was "confirmed by operation of law" under the UIFSA, precluding any further adjudication by the trial court of the preregistration amount of arrears.[11]

We agree that the trial court erred when it reduced the amount of James's child support arrears as determined by the Minnesota 2001 order. We reach this conclusion based on a plain reading of section 5700.608, which states that "[c]onfirmation of a registered support order, whether by operation of law or after notice and hearing, *precludes* further contest of the order *with respect to any matter that could have been asserted at the time of registration*" (italics added).

---

establishing a full or partial defense under subdivision (a), a tribunal may stay enforcement of the registered order, continue the proceeding to permit production of additional relevant evidence, and issue other appropriate orders. An uncontested portion of the registered order may be enforced by all remedies available under the law of this state. [¶] (c) If the contesting party does not establish a defense under subdivision (a) to the validity or enforcement of the order, the registering tribunal shall issue an order confirming the order."

[10] The only substantive difference between section 5700.608 and section 4957 is that the phrase "registered order" was changed to "registered support order." This change is immaterial to the legal issues posed by these appeals.

[11] Because we agree with the Department on this point, we do not reach its alternative arguments that the doctrine of res judicata bars the relitigation of arrears owed through the end of 2001 based on James's unsuccessful litigation of this issue in Minnesota and that the trial court's order violates the full faith and credit clause of the United States Constitution.

There is no dispute that the Minnesota 2001 order was registered in California in 2005. Regarding the confirmation of the order, James does not contest that he was given notice that the order was registered. The record reflects that the court clerk served James with the notice in March 2005 that advised him that he must request a hearing within 25 days to challenge the validity or enforcement of the registered order. James's testimony in 2018 was not inconsistent with that notice. He testified that he could not recall exactly when he learned about the over $89,000 in arrears but "it had to have been either [the] 2005 time frame" when "things started happening that I think might have informed me" or sometime in 2006.

James could have made a timely challenge to the 2005 registration in California as set forth in former section 4955, but he did not.[12] The record does not reflect any such challenge, nor did James ever testify he made any such challenge. Rather, he testified that, beginning in 2007, he unsuccessfully sought in Minnesota to challenge the 2001 Minnesota order.

Therefore, pursuant to former section 4955, subdivision (b), the 2001 Minnesota order became confirmed in California by operation of law. There is no indication that the trial court's 2018 order "to stay partial enforcement" of the arrears is anything other than a permanent reduction of James's child support arrears. However, James was precluded by section 4957 (now section 5700.608) from contesting the arrears, and the trial court did not have the authority to effectively lower the arrears James owed from that amount set by the Minnesota court. (§ 5700.608.)

While the parties do not cite and we have not found any California authority applying the UIFSA to similar facts, our conclusion is consistent with that reached by the

_____

[12] Former section 4955 provision of the UIFSA has been renumbered to section 5700.606 and, although certain language changed, the changes are not material to our analysis here. (See § 5700.606.) Section 5700.606, subdivision (b), provides that if "the nonregistering party fails to contest the validity or enforcement of the registered support order in a timely manner the order is confirmed by operation of law."

12

North Dakota Supreme Court in *Smith v. Hall* (N.D. 2005) 707 N.W.2d 247. In *Smith*, a father attempted to vacate a registered and confirmed child support order years after the order was registered, arguing it was void for lack of personal jurisdiction. Relying on the UIFSA provisions similar to the language in California's, including that " '[c]onfirmation of a registered order . . . precludes further contest of the order with respect to any matter that could have been asserted at the time of registration' " (*id*. at p. 250), the Supreme Court of North Dakota held father was precluded from contesting the registration on the grounds of lack of personal jurisdiction.

James has not established that he could not have asserted at the time of registration his claim that he should have been credited for the time his sons lived with him in the determination of his child support arrears. The UIFSA expressly states that it is a defense to registration that full or partial payment has been made. (See *de Leon v. Jenkins* (2006) 143 Cal.App.4th 118, 126 [noting that "[t]he only pertinent objection allowed by the statute—that '[f]ull or partial payment has been made'—would only apply to an *obligor* contending that arrears are *overstated*"]; *Willmer v. Willmer* (2006) 144 Cal.App.4th 951, 960 ["It is the obligor's burden to prove one of the defenses set forth in section 4956, subdivision (a)."].) Because he failed to timely raise this defense to the 2005 registration of the Minnesota 2001 order, section 5700.608 precludes James from asserting the same claim over a decade later.

We recognize that, as general matter under California family law, California courts may apply an equitable approach and deny the enforcement of arrears where the parent otherwise contributed to the care of the child such as providing a home for the child. (See *In re Marriage of Wilson* (2016) 4 Cal.App.5th 1011, 1016; *Helgestad v. Vargas* (2014) 231 Cal.App.4th 719, 735 ["The essence of the equitable credit approach is that in-the-home support during a period of living with the children can count against an ongoing support order that is framed only in monetary terms."].)

13

However, we are not persuaded that this general equitable approach or the decisions cited by James support the trial court's order. In exercising its discretion, a trial court may not ignore express statutory requirements. (See *S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 600.) Merely by citing to equitable principles, the trial court did not gain the authority to do indirectly what the applicable statutes prohibit it from doing directly. The trial court's ruling allowed James to contest and litigate the issue of the amount of arrears James owed at the time of the January 29, 2001 hearing, years after the 2001 Minnesota order was confirmed under the UIFSA. Because the trial court's exercise of equitable credit conflicted with the clear statutory language of sections 5700.606 and 5700.608, it lacked authority to grant this relief.

James cites no legal authority interpreting the UIFSA that supports the trial court's order. To bolster his contention that the trial court properly exercised its equitable discretion to not enforce certain arrears in light of its finding that he took care of his sons, James (as did the trial court in its December 18, 2018 order) cites to *Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853 (*Keith G.*) and *In re Marriage of Trainotti* (1989) 212 Cal.App.3rd 1072, 1075 (*Trainotti*). However, these authorities do not establish that a trial court may permanently stay enforcement of a portion of arrears, as occurred in this case.

In *Keith G.*, the Court of Appeal affirmed a trial court's "setoff" among conflicting inter-state child support orders. (*Keith G.*, *supra*, 62 Cal.App.4th at pp. 858–859.) The court noted that "[a]llowing the setoff does not reduce or eliminate the amount of the arrearages" but rather "only affects the manner of collection in California," and that "allowing the setoff would not frustrate the purpose of either support order." (*Id.* at p. 860.) Here, by contrast there are no competing support orders at issue, and the trial court's 2018 ruling effectively reduced James's arrears by approximately $28,000, directly frustrating enforcement of the Minnesota 2001 order.

*Trainotti* is even less relevant. That 1989 decision, which considered whether a father had otherwise satisfied his child support obligation by providing a home and support to the child, predates California's adoption of the UIFSA and did not consider a foreign judgment which could not be modified under applicable statutory law. (See *Trainotti*, *supra*, 212 Cal.App.3d at pp. 1075–1076.)

In short, the trial court's order staying enforcement of $28,890 of the 2001 Minnesota order violated sections 5700.606, 5700.607, and 5700.608, and was unsupported by any applicable case law interpreting the UIFSA. Because the trial court lacked authority to modify the 2001 Minnesota order, we reverse that portion of the December 18, 2018 order.

C. *James's Appeal*

James appeals the portion of the trial court's December 18, 2018 order that found that $60,692.15 of the arrears established in the 2001 Minnesota order was enforceable against him.[13] James raises two general claims of error. First, James contends the trial court should have stayed the entire amount of arrears (that is, $89,582.15) because the Minnesota court lacked personal jurisdiction over him. Second, James argues that the trial court in California denied him the opportunity to "present the full range of evidence supporting the full range of equitable relief that he was due."

1. Personal Jurisdiction

We first turn to James's personal jurisdiction claim. In the 2018 proceedings in California, James presented to the trial court his claim that the Minnesota court lacked personal jurisdiction over him. The trial court found against James on that point,

---

[13] The trial court's order stated the balance to be enforced by California was $60,692.15 (representing $89,582.15-$28,890) "PLUS prime interest calculated under Minnesota law, accruing from April 2001 until the present time, LESS payments made each calendar year since April 2001 totaling $36,673.59." The parties do not raise any claims related to the prime interest rate applied by the trial court or its findings that James made $36,673.59 in payments from April 2001 until the present, and we therefore do not review those aspects of the order.

15

emphasizing that James was represented by an attorney in the Minnesota proceedings. On appeal, we understand James to argue that the Minnesota court's assertion of personal jurisdiction over him violated his due process rights guaranteed by the Fourteenth Amendment of the U.S. Constitution. (See *Walden v. Fiore* (2014) 571 U.S. 277, 283 (*Walden*).)

The Department responds that the UIFSA precludes him from now contesting the 2001 Minnesota order on the basis of a lack of personal jurisdiction. We agree. As noted above, section 5700.607, subdivision (a)(1), of the UIFSA states that lack of personal jurisdiction is one of the grounds on which a nonregistering party can seek to vacate the registration of a support order. (See also former section 4956, subd. (a)(1).) However, that challenge must be made in a timely manner. Based on the provisions of the UIFSA discussed above, James was precluded from raising the jurisdictional issue in California in 2018, over a decade after the 2001 Minnesota order was registered and confirmed in California.

Moreover, as the trial court found, there is no merit to James's claim that the Minnesota court did not have jurisdiction over him. The United States Supreme Court has explained, applying longstanding precedent, that "[a]lthough a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " (*Walden*, *supra*, 571 U.S. at p. 283.)

Here, it is undisputed that the child support action in Minnesota arose directly out of James's contacts with that state, where he and Rosemary both were living during marriage and when they dissolved the marriage. The record reflects Rosemary and the children continued to reside in Minnesota after James moved to California. James admitted that he had retained counsel to represent him in the Minnesota proceedings, and the record reflects that James's counsel appeared for him at the January 29, 2001 hearing.

16

Nothing in the record before us reflects that James ever asserted a lack of personal jurisdiction in Minnesota, where he litigated other substantive issues.

James stresses here that, even though his counsel was at the January 2001 hearing, James did not have personal notice of the hearing and its outcome. But James does not explain how that circumstance undermines the Minnesota court's personal jurisdiction over him. That his attorney may or may not have informed him of a particular hearing in the Minnesota family court proceedings is immaterial. (See *Link v. Wabash R. Co.* (1962) 370 U.S. 626, 633–634.) Given that his chosen representative appeared, there is no dispute that James had legal notice of the January 29, 2001 hearing. We reject his challenge to the 2018 order based on a lack of personal jurisdiction in Minnesota.

### 2. Presentation of Additional Evidence

Turning to James's second claim, James contends that the trial court should have continued the 2018 proceeding to give him an opportunity to submit a "full range" of evidence about the equitable offsets he was due. We see nothing in the record demonstrating that James informed the trial court that he wished to present additional evidence. In any event, James cannot show any prejudice from the trial court's failure to grant a continuance to allow him to present additional evidence because the trial court lacked authority to modify the 2001 Minnesota order. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.)

For the reasons explained above, we affirm the portion of the trial court's December 18, 2018 order that ordered enforcement of the balance of the arrears set forth in the 2001 Minnesota order.

## III. DISPOSITION

The December 18, 2018 order is reversed. The trial court is directed to enter a new order that reinstates enforcement of the $28,890 arrears stayed in its December 18, 2018 order. In all other respects, the order is affirmed. In the interests of justice, the Department shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

17

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P.J.


_____
Grover, J.


**H046558**
*Santa Cruz Department of Child Support Services v. Sawyer*

| Trial Court: | Santa Cruz County Superior Court<br>Superior Court No. FL007773 |
|---|---|
| Trial Judge: | Hon. Jana Kast-Davids |
| Counsel for Appellant Santa Cruz County Department of Child Support Services: | Xavier Becerra<br>Attorney General of California<br>Cheryl L. Feiner<br>Senior Assistant Attorney General<br>Jennifer Kim<br>Acting Senior Assistant Attorney General<br>Linda M. Gonzalez<br>Supervising Deputy Attorney General<br>Gregory D. Brown<br>Supervising Deputy Attorney General<br>Jennevee H. DeGuzman<br>Deputy Attorney General |
| Counsel for Appellant James Abbott Sawyer: | Corey Evan Parker<br>Berangere Allen-Blaine<br>The Appellate Law Firm |
| No appearance for Respondent | |

**H046558**
*Santa Cruz Department of Child Support Services v. Sawyer*